IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES A BOLEY, JR., *Administrator of* )
*the Estate of Robert Lee Boley*, )
      Plaintiff, )
 )
        v. )            Civil Action No. 2:21CV197 (RCY)
 )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., *et al.,* )
      Defendants. )
 )

## MEMORANDUM OPINION

This matter is before the Court on Defendants Bynum and Guy's ("the Correctional Officer Defendants") Motion to Dismiss for Failure to State a Claim (ECF No. 23) and Defendants NurseSpring, LLC and Hayes' ("Nursing Defendants") Motion to Dismiss for Failure to State a Claim (ECF No. 29), both filed pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny the Correctional Officer Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 23) and grant in part and deny in part the Nursing Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 29).

## I. FACTUAL ALLEGATIONS

### A. First Complaint of Chest Pain

A little after 9:00 a.m., on April 16, 2019, Robert Boley ("Boley") began to experience chest pains, while in the Deerfield Men's Work Center ("Work Center") recreation area. (Compl. ¶ 19, ECF No. 1). After drinking some water and a soda, Boley sought medical assistance for his continuing chest pains from Nurse Arleathia Peck ("Nurse Peck"). (*Id.* ¶ 20.) Nurse Peck told him

1

that he could not be seen until he filled out a form for a "sick call."[1] (*Id.* ¶ 20.)  Nurse Peck did not examine him or refer him to a physician. *Id.*  Later that day, Boley collapsed in a hallway and lost consciousness. (*Id.* ¶ 21.)  A nurse, Charlette Hayes ("Defendant Hayes"), from a neighboring correctional facility was called over to check on Boley. (*Id.*)  Around 3:00 p.m., Defendant Hayes took Boley's vitals and found that his blood pressure and his pulse were both dangerously low. (*Id.* ¶ 22.)  Defendant Hayes notified a doctor, Alvin Harris ("Dr. Harris"), who ordered an electrocardiogram ("EKG"). (*Id.*)  Defendant Hayes performed an "assessment," asking Boley about his hypertension medication and potential drug use. (*Id.* ¶¶ 24, 26.)  At 3:43 p.m., the EKG results came back "borderline abnormal," and Defendant Hayes took Boley's vitals again. (*Id.* ¶¶ 27-28.)  His blood pressure and pulse had dramatically improved. (*Id.* ¶ 28.)  Defendant Hayes notified Dr. Harris of the EKG results, and Dr. Harris ordered that Boley be given an indigestion medication "[as needed every] 2 hours." (*Id.* ¶ 29.)  Boley was also scheduled for an appointment with Dr. Harris for the next day, and Defendant Hayes instructed Boley not to take his hypertension medication until he met with the doctor. (*Id.*)

### B. Second Complaint of Chest Pain

Boley's chest pain did not improve during the day, and, around 5:00 p.m., he sought medical attention from the officers in his housing unit. (*Id.* ¶ 30.)  Boley's efforts were "disregarded," so he sat in front of the master control booth "in an effort to encourage officers to provide him with access to medical care." (*Id.*)  Officer Joel Guy ("Defendant Guy") was in the master control booth and was in charge of allowing inmates into and out of the unit. (*Id.*)  A different officer eventually notified Sergeant Emmanuel Bynum ("Defendant Bynum") that Boley wanted to see a nurse. (*Id.* ¶ 31.)

---

[1] A "sick call" is a nursing clinic appointment, which is scheduled in advance for non-emergency care. (Compl. ¶ 20.)

At 6:31 p.m., which was after Boley sat in front of the control booth but before the nurse arrived, Boley called a friend. (*Id.* ¶ 32.)  On this call, Boley said that, after being given the indigestion medicine, he was instructed to call for the medical unit if after two hours nothing had happened. (*Id.* ¶ 33.)  He told the friend that he was trying to get medical assistance as nothing had changed, and he asked the friend to contact Boley's brother James ("Plaintiff").[2]  In regard to the pain, Boley stated, "I'm like shit man, that shit ain't – I ain't never felt that shit man." (*Id.*)

Defendant Hayes was summoned, and she took Boley's vitals around 6:52 p.m., which she described as "returning to baseline." (*Id.* ¶ 32.)  Defendant Hayes provided Boley with another dose of indigestion medication. (*Id.*)  Defendant Hayes did not notify Dr. Harris about Boley's continued chest pains. (*Id.* ¶ 34.)

### C. Third Complaint of Chest Pain

Boley continued to experience chest pain throughout the evening and made repeated complaints. (*Id.* ¶¶ 35-36.)  During the evening and night, several inmates asked Defendant Guy to check on Boley. (*Id.* ¶ 36.)  Defendant Guy went to check on Boley at 9:15 p.m. and stayed in his cell for roughly two minutes. (*Id.*)

Plaintiff learned that Boley was having chest pains and called the facility. (*Id.* ¶ 39.)  Plaintiff spoke with Defendant Bynum and told him that Boley needed to go to a hospital or a medical center. (*Id.*)  Defendant Bynum said that Boley would be alright and eventually said that he would allow Boley to call Plaintiff. (*Id.*)  Boley's other brother, Michael, made multiple calls to the facility, and he was told that Defendant Bynum was handling the issue and that Boley was okay. (*Id.* ¶¶ 40-41.)

---

[2] James Boley is also the administrator of Boley's estate and is the Plaintiff in this action.

**D. Fourth Complaint of Boley's Chest Pain**

Both Defendant Guy and Defendant Bynum filed reports hours after Boley's death detailing interactions that they had with Boley the night prior. Defendant Bynum summoned Boley to the Watch Office around 9:25 p.m. and asked how he was feeling. (*Id.* ¶ 44.) The content of their conversation is disputed. Defendant Bynum claims that Boley stated that he felt sleepy and asked about the effects of heartburn. (*Id.*) Plaintiff claims that this description conflicts with inmate statements and the recorded phone calls that portray Boley as experiencing open and obvious pain. (*Id.*)

Boley then went back to his housing unit and was allowed to call Plaintiff, which he did at 9:46 p.m. (*Id.* ¶ 49.) During their phone call, Boley reported feeling "fucked up" in the middle of his chest, being unable to keep food down, feeling light-headed, and claimed that he had not received adequate care. (*Id.*) Plaintiff also claims that Boley was concerned about how long he had been experiencing chest pains and was concerned about going to sleep with these symptoms. (*Id.*)

An inmate claims that Boley saw Defendant Guy once more that night. (*Id.* ¶ 50.) According to the inmate, Boley asked to see a nurse and was "rebuffed." (*Id.*) Boley then went back to his cell to lie down. (*Id.*) Boley was found the next morning, around 5:30 a.m., unresponsive and not breathing. (*Id.* ¶ 51.) At 6:10 a.m., Boley was pronounced dead. (*Id.* ¶ 53.) Boley was determined to have died of a ruptured aortic aneurysm due to hypertensive and atherosclerotic cardiovascular disease. (*Id.* ¶ 55.)

## II. PROCEDURAL HISTORY

Plaintiff filed a Complaint on April 14, 2021. (ECF No. 1.) Defendants Guy and Bynum filed a Motion to Dismiss and a Memorandum in Support on July 28, 2021. (ECF Nos. 23-24.) Defendants Hayes and NurseSpring, LLC, filed a Motion to Dismiss and a Memorandum in

Support on July 30, 2021. (ECF Nos. 29-30.)  Plaintiff filed Memoranda in Opposition to both motions on August 11, 2021, and August 13, 2021. (ECF Nos. 31-32.)  Defendants Guy and Bynum filed a Reply on August 17, 2021. (ECF No. 33.)  Defendants Hayes and NurseSpring filed a Reply on August 19, 2021. (ECF No. 34.)

### III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted).  "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

## IV. DISCUSSION

### A. Denial, Delay, and Withholding of Medical Care in Violation of the Eighth and Fourteenth Amendments

"A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eight Amendment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).   In the context of inadequate medical care, there is an objective element and a subjective element. *Id.*   "The plaintiff must demonstrate that the [defendant] acted with deliberate indifference (subjective) to the inmate's serious medical needs (objective)." *Id.*; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is objectively serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241.   To establish the subjective element, the plaintiff must show that "the official subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Hixson*, 1 F.4th at 302 (citing *Jackson*, 775 F.3d at 178).

If a prison official is aware of a serious medical need, then they must reasonably respond to the risk. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)).   "Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* at 303 (quoting *Farmer*, 511 U.S. at 835).   The treatment provided "must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)).

### 1. Party Positions

#### a. Defendant Guy

Defendant Guy argues that the Complaint lacks sufficient factual allegations to support a claim for deliberate indifference. (Mem. Supp. at 7, ECF No. 24.)   He contends that the claim is

based on assumptions and lacks the specificity needed to rise above a possibility of liability to the standard of plausible liability. (*Id.* at 6-7.)  Further, he contends that none of the factual assertions indicate that Boley's condition was so obvious that even a lay person would recognize the necessity for a doctor's attention. (*Id.* at 8-9.)  He argues that chest pain would not result in "external signs" and that lay people would have no idea that a doctor was necessary. (*Id.* at 9.)  Thus, he argues, it has not been alleged that Defendant Guy knew of or disregarded Boley's medical needs. (*Id.*)  He also contends the did not deny Boley access to medical care in any of the incidents in the Complaint. (*Id.* at 5.)  During the master control booth incident, the Complaint does not allege what Boley was asking for, and Defendant Guy is not implicated simply by being present. (*Id.* at 6.)  Defendant Guy was asked by inmates to check on Boley, he did check on him, and the Complaint does not make any allegation as to what was said or observed. (*Id.* at 7.)  Lastly, the Complaint does not allege what Boley said or did when Defendant Guy check on him later that night, so there is only a possible, not a plausible, constitutional violation. (*Id.* at 8.)

Plaintiff argues that the "assumptions" that Defendant Guy refers to are actually reasonable inferences that are permissible at the motion to dismiss stage. (Mem. Opp'n Correctional Officer Defs. Mot. Dismiss at 6, ECF No. 31.)  Plaintiff argues that the complaints of fellow inmates, Boley himself, and his brothers clearly establish that Boley was in open and obvious pain. (*Id.* at 14.)  Plaintiff points to three interactions between Defendant Guy and Boley that establish that Defendant Guy was subjectively aware of Boley's medical need and completely disregarded that need.  First, Defendant Guy ignored Boley's initial requests for medical attention, so that Boley had to sit in front of the master control booth until a different officer requested medical attention for him. (*Id.* at 11.)  Second, other inmates were so concerned about Boley's condition that they asked Defendant Guy for help. (*Id.* at 12.)  Defendant Guy said Boley "was ok" before checking on him and after a cursory encounter with Boley did nothing and "just shook his head." (*Id.* at 12.)

7

Third, Boley asked to see a nurse the night of his death and Defendant Guy did not call a nurse or take him to Medical. (*Id.*)  Plaintiff contends that this inaction constitutes deliberate indifference.

### b. Defendant Bynum

Defendant Bynum argues that the Complaint makes "[s]weeping conclusory statements masquerading as factual assertions . . ." and that without those statements the Complaint is "devoid of any factual support that Defendant Bynum impeded Plaintiff's access to medical care." (Mem. Supp. at 12.)  Defendant Bynum's argument is summarized by the following passage:

> The facts alleged in the complaint actually show that Defendant Bynum was attentive to Plaintiff's possible medical condition: he called the nurse over to examine Plaintiff the first time; and later, upon receiving a call from Plaintiff's family member, he met with Plaintiff personally and questioned him about his condition. Plaintiff reported that he was sleepy and questioned Defendant Bynum about heartburn. This cannot possibly support a finding that Defendant Bynum had actual knowledge of and disregard for an objectively serious medical need.

(*Id.* at 13.)  Defendant Bynum claims that these actions show that he was not deliberately indifferent to Boley's medical need. (*Id.*)

Plaintiff alleges that Defendant Bynum's actions and omissions constitute deliberate indifference. (Mem. Opp'n Correctional Officer Defs. Mot. Dismiss at 8.)  Plaintiff alleges that both of Boley's brothers told Defendant Bynum that Boley was experiencing chest pains and needed to go to a hospital or medical facility. (*Id.*)  Plaintiff also alleges that other inmates saw that Boley was visibly ill and in serious pain when he interacted with Defendant Bynum. (*Id.* at 8-9.)  Both of these allegations serve as circumstantial evidence that a lay person would have known that Boley needed medical attention. (*Id.* at 9.)  Despite this, Defendant Bynum had Boley return to his cell instead of seeking medical attention for him. (*Id.* at 9-11.)  Thus, he was deliberately indifferent to Boley's medical need.

### c. Defendant Hayes

Defendant Hayes argues that the facts alleged show that she "evaluated [Boley's] complaints on several occasions, performed an EKG, administered medications to address [Boley's] symptoms, consulted with a physician, and referred [him] to be seen by a medical doctor the next day." (Br. Supp. at 13, ECF No. 30.)  Further, Defendant Hayes notes that Boley's blood pressure improved during the time she was monitoring him. (*Id.*)  She contends that the care she provided and her consistent monitoring "would have led any reasonable person to subjectively believe there were no emergent issues to be dealt with." (*Id.*)

Plaintiff alleges that Defendant Hayes was aware of Boley's serious medical condition and reacted with indifference to that condition. (Mem. Opp'n Nursing Defs. Mot. Dismiss at 5, ECF No. 32.)  Specifically, Plaintiff argues that Defendant Hayes was aware of Boley's condition, as she knew that he had collapsed earlier in the day, was complaining of chest pain, and had irregular vitals. (*Id.* at 6.)  Later in the day, she was summoned to the Work Center, and therefore knew that his condition had not improved and was serious. (*Id.*)  There is sufficient circumstantial evidence to establish that Boley was complaining of severe pain. (*Id.* at 6-7.)  Despite his obvious pain, the only assistance Defendant Hayes provided was some indigestion medicine that was clearly not working, given his persistent symptoms. (*Id.* at 7.)  Instead, Plaintiff contends that she should have alerted Dr. Harris to Boley's ongoing symptoms, had Boley checked on, and provided the medicine that Dr. Harris had ordered on the proper intervals. (*Id.*)

### 2. Objective Prong

The deliberate indifference standard requires the plaintiff to establish that the inmate had an objectively "serious medical need." *Hixson*, 1 F.4th at 302.  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241.

Several courts have determined that chest pain satisfies the objective prong of the deliberate indifference standard. *See, e.g., Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005) ("[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard."); *Melvin v. Cty. of Westchester*, No. 14cv2995, 2016 WL 1254394, at *5 (S.D.N.Y. Mar. 29, 2016) (finding that defendant's complaints of chest pain coupled with high blood pressure and a low pulse satisfied the objective prong); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1310 (D. Colo. 2009) (finding that the plaintiff's allegation of suffering chest pain over a several hour period satisfied the objective element of the test).

The Complaint makes several plausible allegations that Boley had a serious medical need that would have been easily recognized by a lay person. Boley complained directly to each of the Defendants that he was experiencing chest pain, and it is common knowledge that chest pain can be a symptom of a serious underlying medical issue. (Compl. ¶¶ 30, 33, 46-48, 50.) Defendant Hayes, and possibly the other Defendants, was also aware that Boley had collapsed earlier in the day. (*Id.* ¶¶ 21-24.) Defendants Guy and Bynum heard concerns about Boley's health from other inmates and Boley's brothers. (*Id.* ¶¶ 33-34, 36, 39-41, 43.) As such, the Court finds that Plaintiff has plausibly alleged that Boley had a serious medical need that would have been apparent to a lay person.

### 3. Subjective Prong

The second prong of the deliberate indifference standard is that "subjectively the officials acted with a sufficiently culpable state of mind." *Jehovah v. Clarke*, 798 F.3d 169, 181 (4th Cir. 2015) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). The plaintiff must show that the defendants "actually knew of and disregarded an objectively serious condition, medical need, or risk of harm." *Id.* (quoting *De'Lonta*, 330 F.3d at 634) (alterations omitted). Prison

10

officials are not liable if they reasonably responded to the substantial risk to inmate health, even if the harm was not avoided. *Farmer*, 511 U.S. at 844.  The plaintiff must establish that each defendant "through the official's own individual actions" has violated the inmate's constitutional rights, so the Court will analyze each Defendant separately. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Sowers v. United States*, No. 1:17cv1490, 2018 WL 6709509, at *9 (E.D. Va. Dec. 20, 2018).

### a. Correctional Officer Defendants

To establish a claim of deliberate indifference against non-medical prison staff, a plaintiff must show that the non-medical personnel (1) were personally involved in the treatment or denial of treatment, (2) deliberately interfered with treatment, or (3) tacitly authorized or were indifferent to the medical provider's conduct. *Howell v. Walrath*, No. 1:20cv1193, 2021 WL 5881803, at *5 (E.D. Va. Dec. 10, 2021); *Hill v. Richmond Justice Ctr.*, No. 1:20cv467, 2021 WL 1428311, at *3 (E.D. Va. Apr. 15, 2021); *see Miltier*, 896 F.2d at 854.  But non-medical personnel "are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning an inmate's diagnosis and course of treatment." *Hill*, 2021 WL 1428311, at *3 (citing *Miltier*, 896 F.2d at 854). To satisfy the subjective prong, the plaintiff must show that defendant had "actual knowledge of the risk of harm to the inmate" and the defendant "must also have 'recognized that his actions were insufficient' to mitigate the risk of harm to the inmate arising from his medical needs.'" *Iko*, 535 F.3d at 241 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)).

A correctional officer's refusal to call for medical staff is usually sufficient, at the motion to dismiss stage, to sustain a claim that the officer was personally involved in the denial of treatment or deliberately interfered with treatment.  In *Caramillo v. Correct Care Solutions, LLC*, the Court denied a motion to dismiss filed by several jail deputies. No. 2:19cv362, 2020 WL 4747786, at *15 (E.D. Va. Feb. 28, 2020).  The defendant, and other inmates, sought help from

three deputies at the Norfolk City Jail, but the requests were "disregarded." *Id.* at *1.  The defendant had been vomiting, losing weight, and had discolored skin and thus had a visible medical need. *Id.*  After being transferred to a different jail, the defendant received medical care but died in a hospital days later. *Id.* at *2-3.  The Court found that the Norfolk City Jail deputies had withheld medical care by completely disregarding the defendant and her fellow inmates' requests. *Id.* at *15.  In *Riddick v. Watson*, the inmate was a recently detained heroin addict that was going through withdrawal. 503 F. Supp. 3d 399, 407 (E.D. Va. 2020).  The inmate notified a corrections officer during intake about her withdrawal status and informed the officer that she was experiencing cramping, vomiting, and diarrhea; however, the officer failed to either observe the symptoms, document the symptoms, or notify the medical staff of the symptoms. *Id.*  During the first night the inmate was incarcerated, she made several attempts to request assistance from officers that passed her cell, but no assistance was given. *Id.* at 408.  In the early morning, she was found unresponsive in her cell and was later determined to have died from fentanyl toxicity. *Id.*  The Court denied the motions to dismiss filed by the correctional officers. *Id.* at 420-21.  The Court determined that at the motion to dismiss stage, the Court had to accept the allegation that "each of these defendants came into contact with the Decedent at some point during her incarceration and learned by looking at or listening to the Decedent that she needed immediate medical assistance." *Id.*  In *Sealock v. Colorado*, the court of appeals reversed a decision granting summary judgment when the correctional officer refused to drive an inmate to the hospital after other inmates informed him that the inmate was having a heart attack and the officer observed symptoms of a heart attack. 218 F.3d 1205, 1210 (10th Cir. 2000).  The court found that the denial of treatment resulted in seven hours of pain and was actionable as a deliberate indifference claim. *Id.* at 1210-11.

Courts have also found correctional officers liable in cases where the officers delayed contacting medical staff and that delay resulted in substantial harm.  In *Coats v. Pope*, the court

found that an inmate's "vomiting, inability to walk or stand, delirious look on his face, inability to speak, and seizures" were obvious signs of a substantial risk. No. 1:17cv2930, 2019 WL 5586871, at *6 (D.S.C. Oct. 30, 2019).  The court denied a motion for summary judgment, finding that a jury could find that a forty-three-minute delay between the start of the inmate's symptoms and the officers contacting EMS to be unreasonable. *Id.*  In *Sosebee v. Murphy*, the Fourth Circuit reversed a district court decision that granted summary judgment. 797 F.2d 179, 183 (4th Cir. 1986).  In that case, an inmate was suffering from severe chest pains on a Sunday night. *Id.* at 180-81.  Fellow inmates created a racket, so that guards would come investigate. *Id.* at 181.  The responding officers said the inmate had already been seen by a doctor that day and would have to wait until Monday morning to see a doctor again. *Id.*  The inmate was found dead in his cell on Monday morning. *Id.* at 180.  In *Sams v. Armor Correctional Health Services*, the inmate made a sick call complaining of having a headache for three days and appeared to have an altered mental state. No. 3:19cv639, 2020 WL 5835310, at *4 (E.D. Va. Sept. 30, 2020).  The Court denied a motion to dismiss for two correctional officers that noticed the inmate acting abnormally and heard his complaints of serious medical symptoms but allegedly took no action. *Id.* at *29.  However, the Court granted a motion to dismiss for two other officers, as the facts alleged did not show a delay in seeking treatment. *Id.* at *29-30.  Those officers had promptly requested medical assistance for the inmate during their shift. *Id.* at *30.

### i. Defendant Guy

The Court finds that there is a plausible claim for deliberate indifference with respect to Defendant Guy.  Assuming the facts alleged to be true and viewing them in the light most favorable to Plaintiff, the Complaint does plausibly allege that Defendant Guy knew of and disregarded Boley's serious medical need.

Plaintiff has alleged that Defendant Guy disregarded his complaints of chest pain and his requests to see a nurse on multiple occasions including the incident at the master control booth, the brief check-in at his cell around 9:15 p.m., and during the final check-in the last time he was seen alive. (Compl. ¶¶ 30, 36, 40, 47-38, 50.) This is similar to the jail deputies in *Caramillo*, who disregarded requests for medical treatment despite being aware that the inmate's condition had not improved. 2020 WL 4747786, at \*14-15. In *Caramillo*, the Court determined that the jail deputies could not avoid responsibility merely because the inmate had some interactions with medical staff since the inmate was not being housed or actively monitored by the infirmary. *Id.* at \*15. Likewise, the fact that Boley had seen a nurse earlier in the day does not mean that Defendant Guy could not have withheld treatment later in the day. Just as in *Riddick*, the Court must assume the truth of the allegation that Boley's medical need was apparent to officers that observed and spoke with Boley. *See* 503 F. Supp. 3d at 407. Defendant Guy's decision not to call for a nurse the night he checked on Boley is comparable to the decision in *Sealock* not to drive the inmate to the hospital. *See* 218 F.3d at 1210. Defendant Guy's conduct falls in line with the complete disregard cases.

Defendant Guy's conduct could also be construed as delaying medical care. Just like in *Sosebee*, other inmates repeatedly expressed concern for Boley to Defendant Guy and attempted to get him medical help through Defendant Guy. *See* 797 F.2d at 182. Both inmates were made to wait until the following day for the medical help, only to be found dead in the morning. *Id.* By refusing to act, Defendant Guy denied treatment when it was needed immediately.

Therefore, the Court will deny the motion to dismiss Count IV as to Defendant Guy, as Plaintiff has stated a plausible claim.

### ii. Defendant Bynum

The Court finds that the Complaint states a plausible claim for deliberate indifference with respect to Defendant Bynum. Boley had two separate encounters with Defendant Bynum. While

Defendant Bynum was not deliberately indifferent in the first encounter, he was deliberately indifferent in the second encounter.

The officers in *Caramillo*, *Riddick*, and *Sealock* all either completely ignored distressed inmates or expressly rejected their calls for help. *See* 2020 WL 4747786, at *1; 503 F. Supp. 3d at 407; 218 F.3d at 1210.   Conversely, Defendant Bynum took action in response to Boley's complaints in the first encounter.  The afternoon that Boley requested a nurse, Defendant Bynum summoned Defendant Hayes. (Compl. ¶¶ 31- 32.)  Defendant Hayes found that Boley's vitals were returning to baseline, and as non-medical staff, Defendant Bynum could rely on that assessment. (*Id.* ¶ 32); *Hill*, 2021 WL 1428311, at *3.  The situation is dissimilar to *Coats*, where the guards were monitoring an inmate and waited too long to seek help. *See* 2019 WL 5586871, at *6. Defendant Bynum neither ignored Boley's complaints nor did he consciously delay his care in the first encounter.

In their second encounter, Defendant Bynum summoned Boley to the Watch Office to see how Boley was feeling and then sent him back to his unit so that Boley could call his brother as his brother had requested. (*Id.* ¶¶ 44, 49.)  This instance is similar to *Caramillo*.  In that case, the Court determined that jail deputies could not avoid responsibility just because the inmate had prior interactions with medical staff since the inmate was not being actively monitored or housed by the infirmary. 2020 WL 4747786, at *15.  Likewise, Defendant Bynum cannot avoid responsibility merely because Boley saw a nurse earlier in the day.  Defendant Bynum claims that when he called Boley to the Watch Office Boley said that he was sleepy and asked him about heartburn. (Mem. Supp. at 11.)  However, Plaintiff disputes this and has pled facts, viewed as true at this stage, that create a plausible inference that Boley would have expressed more severe concerns about his chest pain.  Plaintiff alleges that Boley told Plaintiff on their phone call that he was concerned "that the condition had been going on so long" and "indicated that he was wary of going to sleep that night,

given the state of his health." (Compl. ¶ 49.)  This conversation, coupled with the expressions of concern from fellow inmates, creates a reasonable inference that Boley would have complained of more than heartburn.  With that inference, this interaction is no different than Defendant Guy's two-minute check-in with Boley and also constitutes a plausible claim for deliberate indifference against Defendant Bynum.

At this stage, the Court is to draw all reasonable inferences in favor of the Plaintiff. *See Daniczek v. Spencer*, 156 F. Supp. 3d 739, 747 (E.D. Va. 2016).  As such, the Court will deny the motion to dismiss Count IV as to Defendant Bynum.

### b. Defendant Hayes

Prison medical staff must provide inmates with constitutionally adequate treatment, not merely "some treatment." *De'Lonte v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).  Furthermore, like the non-medical personnel, excessively delaying treatment constitutes deliberate indifference if the delay results in substantial harm. *Webb v. Hamidullah*, 281 Fed. App'x 159, 166 (4th Cir. 2008).  Delay can also serve as the basis for a deliberate indifference claim if the need for treatment is obvious and treatment is not sought in a reasonable amount of time. *Coats*, 2019 WL 5586871, at *2.  A prison medical professional that serves "'as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 427 F.3d at 751.

Similar to the correctional officer cases, claims that a medical professional refused to treat an inmate are typically not dismissed.  In *Mata v. Saiz*, an inmate sought assistance from a licensed practical nurse at the prison infirmary for severe chest pains. *Mata*, 427 F.3d at 750.  The nurse informed her that there was "nothing she could do because the infirmary was closed" and instructed her to return the next morning. *Id.*  The next day a different nurse performed an EKG and the results were normal. *Id.*  Her chest pains continued, so she saw a third and fourth nurse. *Id.*  The

fourth nurse contacted a doctor who ordered the nurse to send the inmate to the hospital immediately. *Id.*  The hospital determined that the inmate had suffered a heart attack and had irreversible heart damage. *Id.*  The court found that the inmate had a plausible claim of deliberate indifference against the first nurse who told her the "infirmary was closed" and refused to perform her gatekeeping role, by not seeking a medical evaluation from a physician or nurse practitioner. *Id*. at 756.  The three other nurses were not deliberately indifferent. *Id.* at 759-61.  The court noted that refusing access or treatment is different than misdiagnosing an inmate. *Id.* at 758.

Misdiagnosing an inmate's illness is not a sufficient basis for a claim. *See, e.g., Blevins v. Horry Cty.*, No. 4:11-03267, 2012 WL 5990105, at *5 (D.S.C. Oct. 31, 2012) ("[I]ncorrect medical treatment, such as an incorrect diagnosis, is not actionable . . ."); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference.").  In *Sealock*, the court affirmed a decision granting summary judgment in favor of a nurse that misdiagnosed the plaintiff as having the flu, when he was actually having a heart attack, and failed to pass on information to a doctor. 218 F.3d at 1211.  In *Hinchman v. Winters*, the court found that a nurse misdiagnosing the plaintiff's stroke and failing to pass on information to a doctor was not sufficient for a claim of deliberate indifference. No. 2:10cv99, 2011 WL 3205366, at *9 (N.D.W. Va. July 27, 2011).  The court found that the claim should be dismissed. *Id.*

Providing "some treatment" is not always sufficient to defeat deliberate indifference claims. *See, e.g., King v. United States*, 536 Fed. App'x 358, 362-63 (4th Cir. 2013) (noting that "some treatment" does not always meet that the standard of "constitutionally adequate treatment" has been met); *Berry v. Peterman*, 604 F.3d 435, 441 (10th Cir. 2010) ("[A] prisoner also is not required to show that he was literally ignored."); *Gardner v. United States*, 184 F. Supp. 3d 175, 181 (D. Md. 2016) ("[A] claim arising from substandard care may be cognizable—but only in

unusual circumstances, such as where the treatment provided is so cursory as to amount to no treatment at all.") (internal quotations omitted). The Fourth Circuit provided the following analogy in *De'Lonta v. Johnson*:

> By analogy, imagine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that the inmate's symptoms, despite the medication, persist to the point that he now, by all objective measure, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not. Accordingly, although Appellees and the district court are correct that a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need.

708 F.3d 520, 526 (4th Cir. 2013). In *Badu v. Broadwell*, the court denied a motion to dismiss, as the court decided that determining whether a doctor's care exceeded the "constitutional minimum" would be better argued on summary judgment. No. 5:11ct3192, 2013 WL 286262, at *5 (E.D.N.C. Jan. 24, 2013). In that case, the doctor switched the plaintiff's prescription from a medication that had been effective to an ineffective medicine and refused for several months to re-prescribe the original medication. *Id.* at *3, 5. In *J.F. v. Correct Care Solutions, LLC*, the court found that a plaintiff's allegation that the nurse told an inmate complaining of chest pain who had a pulse of 48 to "relax and sip water" was such inadequate treatment that it could constitute deliberate indifference. No. 16-2177, 2019 WL 1057401, at *10 (D. Md. Mar. 6, 2019).

The Court finds that the Complaint did not plausibly state a claim for deliberate indifference against Defendant Hayes. She interacted with Boley twice and each time she provided constitutionally adequate care. Although, this is not to say that she provided good or competent care.

Defendant Hayes did not refuse to treat Boley or refuse to perform her role as a gatekeeper. In her first interaction with Boley, she took his vitals, administered an EKG, performed an "assessment," rechecked his vitals, and notified a doctor of the results of the EKG. (Compl. ¶¶ 22-

18

29.)  This is not remotely similar to the nurse in *Mata* that refused to assist an inmate because the infirmary was closed. 427 F.3d at 750.  As previously stated, after determining that Boley's vitals were dangerously low and that the EKG results were borderline abnormal, Defendant Hayes rechecked Boley's vitals. (Compl. ¶¶ 22, 27-28.)  Defendant Hayes then determined that Boley's vitals had dramatically improved before ending their encounter. (*Id.* ¶ 28.)  After Defendant Hayes was summoned a second time, she once again checked Boley's vitals and determined that they were returning to baseline. (*Id*. ¶ 32.)  Further, she performed her gatekeeping role by providing the results from the first encounter to Dr. Harris and scheduling a next day appointment for Boley. (*Id.* ¶ 29.)

Defendant Hayes' actions are more like the misdiagnosis cases of *Sealock* and *Hinchman*. In each of those cases, a nurse misdiagnosed a serious issue as a minor issue and failed to notify a doctor. *See* 218 F.3d at 1211; 2011 WL 3205366, at *24.  Similarly, based on Boley's vitals, Defendant Hayes believed that his medical needs were not pressing.  Her actions are also distinguishable from cases where "some care" was insufficient.  While it does not appear that the indigestion medication was relieving his symptoms, Boley had not been on the medication for a long period of time.  Conversely, the inmate in *Badu* had been on the ineffective medicine for months. 2013 WL 286262, at *5.  Unlike the nurse in *J.F.*, who was dealing with an inmate with a dangerously low pulse, Boley's vitals were returning to baseline. *See* 2019 WL 1057401, at *10. Defendant Hayes' response may have been inadequate, but she was not subjectively aware of the severity of the situation.

Therefore, the Court will grant the motion to dismiss Count IV as to Defendant Hayes.

### B. Supplemental Jurisdiction

The Correctional Officer Defendants argue that if the deliberate indifference claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims.

(Mem. Supp. at 13.)  While this is only raised by the Correctional Officer Defendants, the issue is also applicable to the Nursing Defendants.  Before proceeding to the state law claims, the Court must address this issue.

While the Court could decline to exercise supplemental jurisdiction over the state claims against Defendants Hayes and NurseSpring, the Court will maintain its exercise of jurisdiction. As the Supreme Court has stated, "[a] district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  There are still several Defendants with viable federal claims remaining.  Further, the state law claims, "do not raise a novel or complex issue of state law that would incline the Court to dismiss the claims without prejudice for comity purposes." *Turner ex rel. Richardson v. Iglecia*, No. 2:00cv917, 2005 WL 4783195, at *12 (E.D. Va. Mar. 25, 2005).  The Court has made similar decisions in past; for instance, in *Coppage v. Mann*, the Court dismissed a deliberate indifference claim but maintained jurisdiction over state law medical malpractice claims. *See* 906 F. Supp. 1025, 1039, 1047 n.24 (E.D. Va. 1995).  Thus, the Court will maintain its jurisdiction over the state law claims in respect to all Defendants.

### C. Gross Negligence

Under Virginia law, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)).  It requires "a degree of negligence that would shock fair-minded persons." *Doe v. Baker*, 857 S.E.2d 573, 587 (Va. 2021) (quoting *Cowan*, 603 S.E.2d at 918.)).  The standard is one of "indifference, not inadequacy." *Fijalkowski v. Wheeler*, 801 Fed. App'x 906, 914 (4th Cir. 2020) (citing *Elliott*, 791 S.E.2d at 732).  A claim for

gross negligence "must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Id*.

"A gross negligence claim under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eight and Fourteenth Amendments." *Hixson v. Hutcheson*, No. 5:17cv32, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018); *Rucker v. Piedmont Reg'l Jail Auth.*, No. 3:21cv412, 2021 WL 3863346, at *8 (E.D. Va. Aug. 30, 2021) ("Because the Court has already determined that Plaintiff has stated a claim for deliberate indifference, the Court concludes that he has likewise stated a claim for gross negligence against these Defendants."); *Sams*, 2020 WL 5835310, at *31; *Coppage*, 906 F. Supp. at 1049.  The key difference is that in a gross negligence case, the plaintiff does not have to establish that the defendant subjectively knew of a substantial risk. *Hixson*, 2018 WL 814059 at *6.  Instead, the plaintiff must show that the defendant *should have known* the substantial risk existed. *Coppage*, 906 F. Supp. at 1049.

### 1. Correctional Officer Defendants

The Correctional Officer Defendants contend that the Complaint fails to allege any breach of duty by either officer. (Mem. Supp. at 15.)  Further, they contend that both officers exhibited significant care that surpassed the "some degree of care" standard. (*Id.*)  Defendant Bynum observed Boley, inquired into how he was feeling, called for medical assistance, spoke with Boley's brother, and spoke with Boley. (*Id.*)  Defendant Guy personally checked on Boley after hearing concerns from other inmates. (*Id.* at 15-16.)  Further, neither Defendant is medical personnel, so they should not be held to the same standard as medical personnel. (*Id.*)

Plaintiff argues that gross negligence is an objective standard and that a "reasonable officer . . . would have known that they should, at the very least, alert Medical when an inmate is visibly ill, is reporting suffering chest pain, and asks to see a nurse." (Mem. Opp'n Correctional Officer Defs. Mot. Dismiss at 16.)  Plaintiff also points to the concerns of other inmates and the calls from

Boley's brothers as additional factors that made it unreasonable for the Correctional Officer Defendants not to seek further medical attention for Boley. (*Id.*)

As stated above, gross negligence is a lesser standard of recklessness than deliberate indifference. *Hixson*, 2018 WL 814059, at *6. Thus, since Plaintiff has pled a plausible claim for deliberate indifference against Defendants Guy and Bynum, the Court finds that he has plead a plausible gross negligence claim against both Defendants as well. As such, the Court will deny the motion to dismiss Count II as to Defendants Guy and Bynum.

### 2. Defendant Hayes

Defendant Hayes contends that her actions constitute, at a minimum, "some degree of care" and, thus, Plaintiff has not stated a claim for gross negligence. (Br. Supp. at 6.) Defendant Hayes outlined the care that she provided to Boley:

> First, following Decedent's collapse at the Deerfield Work Center around 3:04 p.m., Nurse Hayes treated Decedent by taking his vital signs, questioning him regarding his condition and medication, and documenting her findings. Next, Nurse Hayes performed an electrocardiogram ("EKG") on Decedent. Around 40 minutes later, Nurse Hayes again took Decedent's vital signs, which indicated that his blood pressure had drastically improved. Nurse Hayes then administered indigestion medication to Decedent and referred him to be seen by a medical doctor on April 17, 2019. Nurse Hayes further instructed Decedent to not take his blood pressure medication. Later in the evening around 6:52 p.m., Nurse Hayes again took Decedent's vital signs, questioned Decedent regarding his condition, and documented her findings. Nurse Hayes again administered indigestion medicine to Decedent. Moreover, throughout Nurse Hayes' treatment of Decedent, she communicated with the physician, Dr. Harris, and updated him as to the status of Decedent.

(*Id.*) (internal citations omitted). If the claim against Defendant Hayes is dismissed, then the claim against her employer NurseSprings, LLC, also must be dismissed. (*Id.* at 6-7, 8 n.2.)

Plaintiff argues that Defendant Hayes' actions would "shock fair minded people" and constitute gross negligence. (Mem. Opp'n Nursing Defs. Mot. Dismiss at 11.) Plaintiff contends that Defendant Hayes was a medical professional who knew the dangers of chest pain. (*Id.*)

Despite this, she "made no attempt to continue to monitor" Boley and failed to contact a doctor. (*Id.* at 12.)

While the facts alleged were not sufficient to state a claim for deliberate indifference, the slight reduction in the degree of recklessness required for a gross negligence claim renders the facts sufficient to sustain the claim for gross negligence on a motion to dismiss. The core difference between deliberate indifference and gross negligence is that gross negligence does not require a showing that the defendant was aware of a risk, only that the defendant should have been aware of the risk. *Hixson*, 2019 WL 30215, at *6-7; *see Caramillo*, 2020 WL 4747786, at *7. In *Sams*, the Court found the conveying of information from a licensed practical nurse to a doctor to be "some care." 2020 WL 5835310, at *32. While Defendant Hayes conveyed the EKG results and vitals to Dr. Harris during her first encounter with Boley, she did not contact Dr. Harris after learning that Boley was still suffering chest pains hours later. (Compl. ¶ 34.) The Court also found the dispensing of medicine to be "some care" in regard to the nurse in *Sams*. 2020 WL 5835310, at *32. While Defendant Hayes did provide indigestion medicine, Plaintiff alleges that it was apparent that the medication was not working, Defendant Hayes did not make Dr. Harris aware of that, and Defendant Hayes did not even attempt to make sure Boley received that medicine every two hours as prescribed. (Compl. ¶ 34.) Further in *Sams*, it was unclear whether that nurse was aware of the inmate's prior complaints; whereas here, Defendant Hayes had treated Boley earlier in the day for the same complaints and was aware that he had collapsed previously. (Compl. ¶ 32); 2020 WL 5835310, at *33. As a nurse, Defendant Hayes *should have known* that Boley's continued chest pain and unresponsiveness to the indigestion medication warranted updating the doctor to rule out life-threatening problems. At the motion to dismiss stage, this is sufficient to state a plausible claim.

As such, the Court will deny the motion to dismiss Count II as to Defendant Hayes and Defendant NurseSpring, LLC.

### D. Willful and Wanton Negligence

"Willful and wanton negligence 'is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Doe*, 857 S.E.2d at 587-88 (quoting *Cowan*, 603 S.E.2d at 919). It is the most extreme level of negligence under Virginia law. *See id*. It requires "more than inattention and neglect." *Id*. at 588.

#### 1. Party Positions

All four of the Defendants argue that since Plaintiff cannot establish gross negligence, Plaintiff cannot meet the higher bar of willful and wanton negligence. (Mem. Supp. at 17; Br. Supp. at 8.) Plaintiff argues that willful and wanton negligence mirrors the deliberate indifference standard, and, since Plaintiff has plausibly alleged that count, this count should not be dismissed. (Mem. Opp'n Correctional Officer Defs. Mot. Dismiss at 15; Mem. Opp'n Nursing Defs. Mot. Dismiss at 10.)

#### 2. Discussion

The definition of willful and wanton negligence "nearly mirrors the subjective prong of the [deliberate indifference] test." 2018 WL 814059, at *9. The subjective prong requires that the defendant "actually knew of and disregarded an objectively serious condition, medical need, or risk of harm," just as the willful and wanton standard requires that the defendant "act[ed] consciously in disregard of another person's rights or act[ed] with reckless indifference to the consequences." *Compare Jehovah*, 798 F.3d at 181, *with Doe*, 857 S.E.2d at 587. Thus, the

decisions on this claim mirror the decisions on the subjective prong of the deliberate indifference claims.

The Court finds that Plaintiff has stated a plausible claim for willful and wanton negligence against Defendants Guy and Bynum for the same reasons that the factual allegations satisfied the subjective prong of the deliberate indifference standard.  Thus, the Court will deny the motion to dismiss Count III as to Defendants Guy and Bynum.

The Court finds that Plaintiff has not stated a plausible claim for willful and wanton negligence against Hayes for the same reasons that the factual allegations failed to meet the subjective prong of the deliberate indifference standard in regard Defendant Hayes.  As such, the Court will grant the motion to dismiss Count III as to Defendants Hayes and NurseSpring, LLC.

### D. Punitive Damages

Under Virginia law, punitive damages are only allowable "where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 479 (Va. 2019) (citing *Xspedius Mgmt. Co. of Va., LLC v. Stephan*, 611 S.E.2d 385, 387 (Va. 2005)).  The purpose is to punish the wrongdoer and warn others. *Xspedius Mgmt.*, 611 S.E.2d at 387.  "[W]here the act or omission complained of is free from fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible." *Brown v. Cox*, No. 2:11cv184, 2011 WL 5438610, at *3 (E.D. Va. Nov. 8, 2011) (quoting *Xspedius Mgmt.*, 611 S.E.2d at 387).  Plaintiff must establish that the conduct at issue was willful and wanton. *Id.* (citing *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003)).  "In the respondeat superior context, 'punitive damages cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not

authorize or ratify." *A.H.*, 831 S.E.2d at 478 (quoting *Egan v. Butler*, 772 S.E.2d 765, 772 (Va. 2015)).

### 1. Defendant Hayes

To warrant punitive damages under Virginia law, the conduct at issue must have been willful and wanton. *See Green v. Ingram*, 608 S.E.2d 917, 923-24 (Va. 2005); *Washington v. Jurgens*, No. 3:16cv184, 2016 WL 3661320, at *10 (E.D. Va. July 1, 2016).  Given that the Court will dismiss the claim against Defendant Hayes for willful and wanton negligence, the Court will also dismiss the claim for punitive damages.

### 2. Defendant NurseSpring

Defendant NurseSpring argues that a punitive damages claim cannot be based on a respondeat superior theory when the employer did not authorize or ratify the conduct. (Br. Supp. at 9.)  Plaintiff concedes that the allegations are insufficient to state a claim against Defendant NurseSpring. (Mem. Opp'n Nursing Defs. Mot. Dismiss at 10 n.2.)

Defendant NurseSpring has correctly stated that Virginia law requires the principle or employer to either participate, authorize, or ratify that conduct at the forms the basis for the punitive damages claim. *See A.H.*, 831 S.E.2d at 478; *see also Golesorkhi v. Lufthansa German Airlines*, No. 96-2211, 1997 WL 560013, at *2 (4th Cir. Sept. 10, 1997).  Plaintiff admittedly has failed to allege facts to establish that Defendant NurseSpring participated, authorized, or ratified any of Defendant Hayes' actions.  Therefore, the Court will dismiss the claim for punitive damages as to Defendant NurseSpring.

## V. CONCLUSION

For the reasons detailed above, the Court will deny the Correctional Officer Defendants'

Motion to Dismiss for Failure to State a Claim (ECF No. 23) and grant in part and deny in part

Nursing Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 29).

An appropriate Order shall issue.

_____ /s/
Roderick C. Young
United States District Judge

Richmond, Virginia
Date: <u>March 28, 2022</u>