UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
JUL - 8 2022
CLERK U.S. DISTRICT COURT
NORFOLK, VA

JAMES A. BOLEY, JR., *Administrator of the Estate of Robert Lee Boley*,

    **Plaintiff,**

v.                                                          Civil Case No.: 2:21cv197

**ARMOR CORRECTIONAL HEALTH SERVICES, INC.,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

Before the Court is Defendants Armor Correctional Health Services, Inc., Alvin Harris M.D., and Arleathia Peck, LPN's[1] (collectively, the "Armor Defendants") Motion to Exclude Plaintiff's Expert Witnesses ("Motion to Exclude") and accompanying memorandum in support. ECF Nos. 64–65. Plaintiff James A. Boley, Jr., Administrator of the Estate of Robert Lee Boley, ("Plaintiff") filed a memorandum in opposition, ECF No. 77, and the Armor Defendants filed a reply, ECF No. 79. The issues are sufficiently addressed in the briefing and therefore the Court decides the motion without a hearing in accordance with Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).

### I. INTRODUCTION

Plaintiff filed a four-count complaint against Defendants asserting state law claims for negligence, gross negligence, and willful and wanton negligence, and one claim for federal civil rights violations, arising from the death of Robert Lee Boley, an inmate at the Deerfield Men's

---

[1] The Armor Defendants motion' and brief referred to Defendant Peck as an "RN," but their reply referred to her as an "LPN." *Compare* ECF Nos. 64-65 *with* ECF No. 79. Since both the complaint, ECF No. 1, and the Armor Defendants' answer, ECF No. 10, refer to Peck as an LPN, the Court will use that designation.

Work Center, a correctional facility in Capron, Virginia. ECF No. 1. While incarcerated, the Decedent died on April 17, 2019, from a ruptured aortic aneurysm due to hypertensive and atherosclerotic cardiovascular disease. *Id.* at 16. Pertinent to this motion, the Armor Defendants provided health care services to inmates at the correctional facility, and Plaintiff alleges that because of their failure to timely provide medical attention to Decedent's serious complaints of chest pain on April 16, he died the next day. *Id.*, *passim*. In support of his claims, Plaintiff disclosed and provided written reports from William M. Bethea, M.D., Lisa Shawler, RN, and Lorie E. Roscoe, RN.

The Armor Defendants challenge these expert witnesses and seek to have their testimony excluded on several grounds. First, Defendants contend that Dr. Bethea, whose opinions are directed to the alleged acts and omissions of Dr. Harris, cannot qualify as a standard of care witness in Virginia because he did not meet the active clinical practice requirement under Virginia Code § 8.01-581.20. ECF No. 65 at 2. Second, Defendants argue that RN Shawler cannot offer opinions regarding Armor Correctional Health Services, Inc. because she does not meet the active clinical practice requirement with respect to prison medical care. *Id.* Third, the Armor Defendants challenge RN Shawler's and RN Roscoe's opinions regarding LPN Peck because they lack foundation and therefore are speculative, since they are predicated on LPN Peck having interacted with the Decedent when he first complained of chest pain, and no reliable evidence establishes that fact. *Id.*

## II. LEGAL STANDARD

Rule 702 of Federal Rules of Evidence permits admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "is

the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"); *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). The Court must ensure that an expert's opinion is based on "*knowledge* and not on belief or speculation." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Expert testimony may be admitted pursuant to Rule 702 if the testimony is both relevant and reliable, considering a number of factors including whether the theory or technique "can be (and has been tested)," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 593–94 (1993). The evaluation of these factors "can 'depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Sardis*, 10 F.4th at 281 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "Accordingly, trial courts are typically given 'broad latitude' to determine which of these factors (or some other unspecified factors) are 'reasonable measures of reliability in a particular case.'" *Id.* (citation omitted).

Although the admissibility of expert opinion is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as explained in *Daubert*. 509 U.S. at 594. In doing so, the Court has an obligation to "ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*, 10 F.4th at 281 (emphasis in original) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017)). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.* Despite the Court's "broad discretion" to determine which factors are "reasonable measures of reliability in a particular case," the determination of an expert's reliability is not an

3

issue that can be delegated to a jury. *Id.* As recently emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance and/or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. With these principles in mind, the Court turns to the facts and argument made by the parties.

### III. ANALYSIS

A. <u>Dr. Bethea Meets the Requirements of Virginia Code § 8.01-581.20</u>

Dr. Bethea is an internal medicine specialist who, after a long career practicing medicine in Hampton Roads, Virginia, moved to Florida in 2013 where he volunteers at a low-income clinic one day per week. ECF No. 65, attach. 4 at 3–4, 7, 10. As he described in his deposition, he does "not practic[e] in an acute environment," and "[t]he nature of what we see now is not one where people come in with acute complaints . . . " *Id.* at 19, 21. Instead, he testified, "we see the patient, either with a specific question in mind or referral from a nurse practitioner, and pick up their care from that point on." *Id.* at 11.

Virginia law provides that "in any action against a physician . . . or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in the Commonwealth,"

> [a] witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and what conduct conforms or fails to conform to those standards and if he has had an active practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code § 8.01-581.20. The Armor Defendants argue that Plaintiff's expert Dr. Bethea, an internist who since 2013 works one day a week at a medical clinic in Florida, does not meet the active clinical practice requirement codified in Virginia law, and therefore may not testify about Dr. Harris's alleged failure to meet the standard of care in his treatment of Decedent. ECF No. 65

4

at 4-6. Quoting from the Supreme Court of Virginia's decision in *Jackson v. Quereshi*, 277 Va. 114, 124 (2009), the Armor Defendants contend that "the operative question is whether the expert 'actually performed the procedure at issue in his clinical practice within one year of the date of the alleged negligent act or omission." *Id.* at 3. They then argue that "the treatment at issue in this case is the assessment and treatment of chest pain present as Decedent's primary or sole complaint."[2] *Id.* at 4. Arguing that Dr. Bethea admitted in his deposition that, within one year of April 16, 2019, he had not treated a patient in Decedent's emergent condition, the Armor Defendants conclude that Dr. Bethea did not meet the active clinical practice requirement. *Id.* at 4-6, ECF No. 79 at 2, 11.

Relying on the Supreme Court of Virginia's decisions in cases such as *Holt v. Chalmeta*, 295 Va. 22 (2018), and *Wright v. Kaye*, 267 Va. 510 (2004), Plaintiff argues that the requirement to have performed the medical procedure at issue within one year is only considered if the expert is in a related field of medicine, and unnecessary if his active clinical practice is in the defendant's specialty. ECF No. 77 at 3 ("It is only when determining whether a proffered expert 'falls within a related filed of medicine' that the 'actual performance of the procedure at issue' becomes relevant."). Since Drs. Bethea and Harris are both internists, Plaintiff argues, that is sufficient to establish that Dr. Bethea has an active clinical practice in Dr. Harris's specialty. *Id.*

The Court need not reach the question as to whether Dr. Bethea's role as an internist, the same specialty as Dr. Harris, is sufficient standing alone to satisfy the active clinical practice test

---

[2] The Armor Defendants later seem to suggest that the operative medical procedure is the treatment of patients with chest pain as an emergent condition. *See id.,* at 5-6 ("Dr. Bethea stated he rarely, if ever, treats patients with emergent conditions in the clinic…"); ECF No. 79 at 2 ("Plaintiff does not contest that the assessment of acute chest pain is the relevant procedure"); at 11, n.1 ("The Armor Defendants also reiterate that given Dr. Bethea's undisputed testimony that since 2013, his treatment of emergent conditions generally has been infrequent, Plaintiff cannot establish that Bethea's active practice in the applicable specialty or a related field is more than de minimis.")

5

without looking to whether he performed the specific medical procedure at issue in this case. This is so because the Court **FINDS** that Dr. Bethea, in fact, has performed the same medical procedure at issue with respect to Decedent within one year of April 16, 2019, and therefore satisfies the test.

As noted, the Armor Defendants originally contended that the operative medical procedure Dr. Bethea was required to have performed within the relevant time period was "the assessment and treatment of chest pain present as Decedent's primary or sole complaint." ECF No. 65 at 4. The Armor Defendants then cite at length from Dr. Bethea's deposition wherein he testified that he generally does not see acute care patients. However, this cabining of the medical procedure at issue—evaluating chest pain in patients for whom that is their primary or sole complaint—narrows the definition of the procedure too far. In their Reply the Armor Defendants further attempt to limit the definition to those patients not only with chest pain as a primary or sole complaint, but also those for whom the chest pain is an emergent condition. *See* ECF No. 79 at 2, 11 n.1. This overly narrowed definition eliminates from consideration those patients for whom chest pain is but one symptom, and those patients for whom chest pain ultimately, after careful evaluation, is not indicative an emergency heart issue but nonetheless is present.

First, even if chest pain was Decedent's primary complaint, the practice of evaluating chest pain and determining its significance is a skill that internists must possess regardless of whether the chest pain is the primary complaint or not, and regardless of whether it ultimately results in an emergency situation or not. Dr. Bethea established this point in his deposition.

> The nature of what we see now is not one where people come in with acute complaints, so under those circumstances it's infrequent to see someone along those lines. Although when you're doing the review of systems and you ask about chest pain, it's very common for people to say, Yes, I have chest pain. Then the responsibility revolves around determining the pertinence of it. If it's a situation that you can clearly delineate as being noncardiac in origin, then your responsibility has been met. If you can't prove that it's noncardiac in origin, your responsibility is to assume that it is.

6

> All chest pain is heart disease until deemed otherwise, but it's very easy to deem most of it in the otherwise category.

ECF No. 65, attach. 4 at 21–22. By his testimony, Dr. Bethea is very clearly articulating that he regularly sees patients at his clinic who complain of chest pain—which would include during the relevant time period—and it is his role as an internist to determine whether the chest pain indicates an emergent condition necessitating an ambulance ride to the hospital, or is "otherwise." Just because most of the time the diagnosis is "otherwise" does not mean that Dr. Bethea's exercise of such discernment on a regular basis constitutes a separate medical procedure from the skill required to determine when the condition is an emergency. It is the same skill, and the same procedure.

As a result, the Court **FINDS** that Dr. Bethea engaged in an active clinical practice during the relevant time period as required under Va. Code § 8.01-581.20, and therefore the Armor Defendants' Motion to Exclude his testimony is **DENIED**.

B. <u>RN Shawler May Not Offer Opinions Regarding Armor Correctional Health Services, Inc.</u>

In addition to opinions regarding LPN Peck, RN Shawler's expert report included additional opinions regarding Armor Correctional Health Services, Inc., LPN Peck's employer, which the Armor Defendants have challenged by their Motion to Exclude. ECF No. 65 at 6–7. In response to the Motion, Plaintiff advised that he is withdrawing RN Shawler's opinions regarding the corporate defendant. ECF No. 77 at 1. Accordingly, the Armor Defendants Motion to Exclude RN Shawler's opinions regarding Armor Correctional Health Services, Inc. is **GRANTED**.

C. <u>The Admissibility of RN Shawler's and RN Roscoe's Opinions Regarding LPN Peck Depends Upon the Resolution LPN Peck's Summary Judgment Motion.</u>

Plaintiff's nurse expert witnesses RN Shawler and RN Roscoe offered opinions in their reports addressing LPN Peck's involvement in Decedent's care the day before he died. The Armor Defendants contend that no credible evidence supports the proposition that LPN Peck saw

7

Decedent at all on that day, and thus argue that their opinions regarding LPN Peck are inadmissible because they lack a proper foundation and are speculative. ECF No. 65 at 9-13. They contend that the only evidence upon which the nurse experts rely for their belief that LPN Peck was involved in Decedent's care is a letter from fellow inmate David Lee Copeland written shortly after Decedent's death. *Id.* In that letter to Decedent's family, Copeland implicated LPN Peck in "brushing off" Decedent's chest pain concerns. *Id.*, attach. 5. Plaintiff contends that there is additional evidence implicating LPN Peck in Decedent's care, but only provided a summary of his characterization of the evidence, arguing:

> As explained in greater detail in Plaintiff's Opposition the Armor Defendants' Motion for Summary Judgment which will be filed shortly,[3] there is evidence in the record that Mr. Boley went to medical in the afternoon on April 16, 2019 and was rebuffed by Nurse Peck. This evidence includes statements by Nurse Charlehe Hayes, Mr. Boley himself in recorded phone calls, and fellow inmates who were present that day. There is evidence in the record that Mr. Boley was rebuffed by medical staff at a time when the only medical staff present at the Men's Work Center was Nurse Peck.

ECF No. 77 at 5. None of the referenced information was submitted with Plaintiff's opposition to the Motion to Exclude. *See* ECF No. 77, *passim*. Similarly, in their Reply the Armor Defendants deferred responding in large measure to the import of Plaintiff's additional evidence. ECF No. 79 at 3 ("The Armor Defendants will also reserve the majority of their rebuttal arguments regarding the claims against Nurse Peck for subsequent briefing on their Motion for Summary Judgment.").

Necessarily, resolution of the Armor Defendant's summary judgment motion will resolve the question of whether there is an adequate foundation for RN Shawler's and RN Roscoe's criticisms of LPN Peck. If the Court finds a genuine issue of material fact as to whether LPN Peck did interact with Decedent on April 16 and denies summary judgment on that basis, then

---

[3] Plaintiff's opposition was filed on May 11, 2022, five days after submitting his opposition to the Motion to Exclude. *See* ECF No. 83.

necessarily that would provide a sufficient foundation for RN Shawler's and RN Roscoe's opinions.[4]  Since summary judgment is not before the undersigned, the Court declines here to resolve whether a genuine issue of material fact is in dispute in regards the establishment of a proper foundation for the nurse expert opinions regarding LPN Peck.  Consequently, at this time the Armor Defendants' Motion to Exclude RN Shawler's and RN Roscoe's opinions regarding LPN Peck is **DENIED**.

### IV. CONCLUSION

The Armor Defendants' Motion to Exclude ECF No. 64, is **GRANTED** in part and **DENIED** in part.  It is **GRANTED** to the extent RN Shawler will be excluded from offering opinions regarding Armor Correctional Health Services, Inc., and **DENIED** in all other respects.

The Clerk is **DIRECTED** to forward a copy of this order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 8, 2022

---

[4] Of course, if the Court grants summary judgment with respect to LPN Peck, then the Motion to Exclude RN Shawler's and RN Roscoe's opinions about her is moot.