UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES A. BOLEY, JR., *Administrator of
the Estate of Robert Lee Boley*,

      Plaintiff,

v.                                                                                        Civil Case No.: 2:21cv197

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., *et al.*,

      Defendants.

## OPINION AND ORDER

Before the Court are Defendants Sergeant Bynum's and Officer Guy's ("the Correctional Officers") Motion to Exclude Expert Testimony of Anthony Callisto and a memorandum in support. ECF Nos. 66-67. Plaintiff James A. Boley, Jr., Administrator of the Estate of Robert Lee Boley, ("Plaintiff") filed a memorandum in opposition, ECF No. 76, and the Correctional Officers filed a reply, ECF No. 78. The issues are sufficiently addressed in the briefing and therefore the Court decides the motion without a hearing in accordance with Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).

## I. INTRODUCTION

Sergeant Emmanuel Bynum and Officer Joel Guy are correctional officers at the Deerfield Men's Work Center, the correctional facility where Decedent Robert Lee Boley was an inmate at the time of his death. Plaintiff's four count complaint alleges negligence, gross negligence, willful and wanton negligence, and deprivation of civil rights against, *inter alia*, the Correctional Officers for failing to provide Boley with timely medical care. Plaintiff alleges the Correctional Officers knew or should have known that Boley was in need of acute care for a serious medical condition,

and failed to arrange for that care until it was too late, thereby resulting in Boley's death. Anthony Callisto, Jr., a correctional expert, provided a written report and deposition testimony on behalf of Plaintiff contending that the Correctional Officers breached the standard of care in several respects regarding the duties of correctional officers to attend to Boley's emergency medical condition. Relying on Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, the Correctional Officers challenge Callisto's opinions on the following grounds: 1) they lack sufficient foundation because they are based on speculative assumptions, evidence of which is not in the record; 2) his opinion regarding the frequency with which inmates must be monitored or observed by correctional officers is unreliable since Callisto failed to provide any basis for his opinion; 3) they improperly usurp the role of the court and jury when addressing the Correctional Officers' alleged breaches of the standard of care since this issue does not require specialized knowledge; and 4) they are irrelevant to the extent they concern some of the duties correctional officers owe to inmates which are not at issue in this case. ECF No. 67.

Plaintiff contends that Callisto's opinions are reliable because they are based on evidence in the record disregarded by the Correctional Officers; that they are based on his extensive experience and qualifications; that they are not legal conclusions but involve a subject—the proper operation of correctional facilities—within Callisto's specialized knowledge and outside the common understanding of a lay jury; and that the isolated references to other duties owed by correctional officers do not express opinions critical of the Correctional Officers and do not justify striking Callisto's entire testimony. ECF No. 76.

## II. LEGAL STANDARD

Rule 702 of Federal Rules of Evidence permits admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the

evidence or to determine a fact in issue," "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"); *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). The Court must ensure that an expert's opinion is based on "*knowledge* and not on belief or speculation." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (emphasis in original) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Expert testimony may be admitted pursuant to Rule 702 if the testimony is both relevant and reliable, considering a number of factors including whether the theory or technique "can be (and has been tested)," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Daubert*, 509 U.S. 579 at 593–94. The evaluation of these factors "can 'depend[] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Sardis*, 10 F.4th at 281 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). "Accordingly, trial courts are typically given 'broad latitude' to determine which of these factors (or some other unspecified factors) are 'reasonable measures of reliability in a particular case.'" *Id.* (citation omitted)

Although the admissibility of expert opinion is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as explained in *Daubert*. 509 U.S. at 594. In doing so, the Court has an obligation to "ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis*, 10 F.4th at 281 (emphasis and alteration in original) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017)). "Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Id.* Despite the Court's "broad discretion" to determine

3

which factors are "reasonable measures of reliability in a particular case," the determination of an expert's reliability is not an issue that can be delegated to a jury. *Id.*

### III. ANALYSIS

#### A. Callisto's Opinions are Based on a Sufficient Foundation

The Correctional Officers contend that Callisto's opinions rely on speculative assumptions which are not supported by evidence in the record. In support of this proposition, they refer to deposition testimony of David Copeland, an inmate who was incarcerated in the same unit as Boley and wrote a letter to Decedent's family describing how Boley's serious complaints were ignored by correctional officials until it was too late. ECF No. 67 at 5-6. The Correctional Officers reject Callisto's assumption that Boley's failure to report for kitchen duty at 3:00 a.m. should have apprised any correctional officer that Boley was seriously ill, since he had a scheduled medical appointment later that day. *Id.* at 4-5. They point to statements Copeland made in his deposition which they suggest both contradict earlier representations Copeland made and, on the contrary, offer support for actions the Correctional Officers claim they took to attend to Boley.[1] *Id.* They contend that "[t]here is no admissible evidence that Mr. Boley was not observed on an hourly basis

---

[1] The Correctional Officers did not attach any part of Copeland's deposition transcript to their motion, nor did they cite in their brief where the Court might find the transcript. The Court was able to locate Copeland deposition transcript excerpts submitted by the Correctional Officers in connection with their motion for summary judgment—at ECF No. 61, attach. 3—but only one of their brief's three citations to that deposition was included with those excerpts. ECF No. 67 at 5-6 (citing deposition excerpts from pp. 49, 130 and 130-32 of the deposition transcript, with only the excerpt from page 49 filed with attachment 3). Searching the docket further, the Court located another portion of Copeland's deposition transcript attached to the Armor Defendants' Motion to Exclude Plaintiff's Expert Witnesses. ECF No. 65, attach. 6. Unfortunately, that excerpt also excluded the relevant pages. Continuing its search, the Court located more of Copeland's deposition excerpts attached to the Armor Defendants' Memorandum in Support of Motion for Summary Judgment as "Exhibit F." ECF No. 58, attach. 6. Unfortunately, none of the cited excerpts were provided with this exhibit. The Court should not have to hunt through the docket (96 entries now and counting) to find the exhibits the parties rely on to support their motions. Better practice would have been to include all exhibits the parties rely on for this Motion as attachments to the Motion itself, or at the very least, cite in their brief to that part of the docket which contains the exhibit. And certainly, if such evidence is discussed in a legal brief, it must be provided to the Court in the first instance.

4

or more", as Callisto stated, and argue that Callisto's assumptions as to Bynum's and Guy's alleged failure to attend to Boley have no evidentiary support in the record. *Id.* at 5.

Plaintiff disputes that the record does not support Callisto's opinions, and argues that the Correctional Officers ignore specific evidence in the record, including, for instance, declarations from other inmate witnesses; the consistent deposition testimony of fellow inmate David Copeland which was omitted by the Correctional Officers in favor of the selective excerpts they cited; jail records reflecting that correctional officers only made rounds to monitor Boley twice during the night; Boley's obvious suffering, which would have been manifestly apparent according to Plaintiff's medical expert given the ruptured aneurysm Boley was experiencing; and Bynum's and Guy's admissions in their own deposition testimony. ECF No. 76 at 4-8. Plaintiff contends that in all cases where the facts are disputed, such as here, an expert witness can determine for himself which facts to rely on, and that is what Callisto permissibly has done here. *Id.* at 3.

In their reply, the Correctional Officers argue that what other inmates may have known about Boley's physical condition and complaints, and what Boley may have said to them, does not impute knowledge to the correctional officers, nor does the medical expert's opinion regarding the significant pain Boley would have experienced. ECF No. 78 at 2-4.

Rule 702 specifically requires that, when offering opinions in court, an expert's testimony must be based on "based on sufficient facts or data." While the Correctional Officers contend that the facts proffered by Plaintiff are insufficient to support Callisto's opinions, the Court disagrees. Plaintiff's medical expert establishes that Boley's medical condition would have caused him significant pain, and a reasonable inference can be drawn that such severe pain would have manifested itself in Boley's countenance and conduct, and been apparent to others if they had been appropriately monitoring him. Other inmates offered sworn declarations as to Boley's obvious

pain and discomfort and his repeated complaints thereof. Bynum, who was on duty during the evening of April 16, admitted that he interacted with Boley, "had personal knowledge of Mr. Boley's condition from when he checked on Mr. Boley shortly after arriving at the Work Center and later when Mr. Boley came to his office to speak with his brother."[2] ECF No. 67 at 4-5. While Bynum himself apparently claims that Boley's condition was not cause for alarm, Plaintiff's other evidence permits the reasonable inference that it would have and should have been cause for alarm.

Moreover, there is a vigorous dispute as to whether any correctional officers monitored Boley regularly during the night, regardless of what intervals were required by the standard of care. Without deciding the dispute regarding how often an inmate in Boley's condition should be observed or monitored—whether it is the fifteen-minute intervals advocated by Callisto or the hourly intervals advocated by Boley and Guy—there is evidence in the record in the form of the written log of rounds conducted by correctional officers that permits Callisto to draw reasoned inferences that the correctional officers failed in their duty to Boley.

According to Callisto, the log shows that Guy only made rounds at 9:30 and 11:45 p.m. on April 16, and at 3:00 a.m. on the morning of April 17.[3] ECF No. 67 attach. 2 at 44. Given Boley's severe pain and repeated complaints to other inmates and his brother, it is reasonable to infer that Boley's discomfort would have been obvious to a correctional officer charged with monitoring inmates, and that Boley would have repeated those complaints to a correctional officer during the officer's rounds. Furthermore, if Boley was monitored at regular intervals, then a reasonable

---

[2] Again, although cited by the Correctional Officers in their opening brief, Bynum's transcript was not provided to the Court in connection with this Motion, although the Court was able to find it attached to their Motion for Summary Judgment, which is not before the undersigned. ECF No. 61, attach. 5.

[3] The log itself was not provided to the Court in connection with this Motion by either party. Once again, the Court was able to locate it, albeit not without difficulty, within an exhibit Plaintiff proffered in connection with his opposition to the Correctional Officers' Motion for Summary Judgment, ECF No. 82, attach. 4.

inference could be drawn that a correctional officer should have noticed Boley's discomfort and attended to him. Alternatively, if regular rounds were not conducted, as the log suggests, then even by the Correctional Officers' standards Boley was not adequately monitored, and the same reasonable inference could be drawn that such regular rounds would have revealed Boley's medically emergent condition. Consequently, Callisto's opinions are not speculative but rather rely on facts in the record, albeit disputed, and reasonable inferences drawn therefrom.

B. Callisto's Opinion Regarding the Standard of Care for Monitoring Inmates is Reliable

The Correctional Officers challenge the reliability of Callisto's opinion that the standard of care required corrections officials to observe or monitor the safety and well-being of inmates every thirty minutes generally, and every fifteen minutes when an inmate is determined to be in some manner of distress. ECF No. 67 at 7-8. Pointing to the sixty-minute standard established by the American Correctional Association and the Virginia Department of Corrections, the Correctional Officers contend that Callisto provided no basis for his opinion setting a different standard. Plaintiff responds that the standard of care may not be established by private rules, and argues that Callisto's long experience in the field is sufficient reason to support his opinion on this issue. ECF No. 76 at 8-9.

When expert testimony is based upon experience as opposed to purely scientific testimony, reliability must be examined differently because experiential testimony "does not 'rely on anything like a scientific method.'" *Radiance Found., Inc. v. NAACP*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (citing *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007)). While testimony based upon experience "provide a sufficient foundation for expert testimony . . . the district court must require an experiential witness to explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably

7

applied to the facts." *Id.* (internal quotations omitted). Callisto cited his forty years of experience in the correctional field describing the work he had done and the positions he held, to establish the basis of his specialized knowledge. He offered opinions in his report and expounded on them in his deposition regarding the frequency with which he believed Boley should have been observed and monitored, based on the events leading up to the evening shift, where it appears Boley was irregularly monitored, perhaps only once, between 9:30 p.m. and 3:00 a.m. Those events included Boley's collapse earlier in the day, his subsequent visits with medical personnel, his complaints of illness to his brother on a phone call which was coordinated by Bynum who also spoke with Boley's brother, inmate claims that they made requests for medical help for Boley to correctional officers, and Boley's acknowledged complaints to Lieutenant Daniels, Guy and Bynum. *See* ECF No. 67, attach. 2, *passim*. Callisto summed up the basis for his opinion that the standard of care required observation and monitoring of Boley in fifteen-minute intervals as follows:

> I can speak to what the reasonable[,] responsible correctional practice is when I've got an inmate that has exhibited illness that I was alerted to, I was told about, and what my actions should be. So as a correctional officer, you know, the -- the supervision and observation and monitoring of that inmate at a heightened level is an important part of making sure that they get the care they need.

ECF No. 67, attach. 2 at 66. He later concluded:

> Once -- once Bynum and Guy knew that -- that Mr. Boley had been to medical, that, you know, that there was -- that he was continuing his -- his complaint about pain or complaint and concern, it heightens the responsibility to supervise and monitor Mr. Boley for any further signs that they may want to take some action on. So no, it doesn't reduce it or eliminate it. It actually increases it.

*Id.* at 76-77. Callisto sufficiently explained the basis for his opinion that the standard of care required Boley to be monitored every fifteen minutes. Although the American Correctional Association and the Virginia Department of Corrections may provide a longer interval as the appropriate standard of care generally, Callisto has sufficiently established "how [his] experience

8

leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc.*, 27 F. Supp. 3d at 674 (citing *Wilson*, 484 F.3d at 274). As a result, Callisto's opinion is reliable.

C. Callisto's Opinions Do Not Usurp the Role of the Court or Jury

The Correctional Officers contend that Callisto should not be permitted to testify that they "had constitutional, statutory, and common law duties and . . . that [the Correctional Officers] breached their duties." ECF No. 67 at 10-11. They argue that "no specialized knowledge or expertise is required to apply Mr. Callisto's purported standards to the facts of this case. It is for the jury, not Plaintiff's expert witness, to determine whether the standard of care was breached." *Id.* at 9. They argue that such testimony usurps the role of the court to assess the law and the jury to apply the law to the facts, and that Callisto's proposed testimony "is replete with legal conclusions." *Id.* at 10.

Plaintiff counters that the appropriate operation of a correctional facility, which would include the conduct required of correctional officers, is not within the purview of a lay jury. ECF No. 76 at 9. He argues that Callisto does not provide legal conclusions but merely embraces the ultimate issue to be decided by the jury, as contemplated by Federal Rule of Evidence 704(a). *Id.* at 9-10.

The Correctional Officers' arguments are without merit. First, when a standard of conduct is in dispute, "and, where the standard is not defined by the generic—a reasonable *person*—but rather by the specific—a reasonable *officer*—it is more likely that Rule 702's line between common and specialized knowledge has been crossed." *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993). The issue in this case with respect to the Correctional Officers is whether their conduct, as correctional officers, violated their duty to Boley, as an inmate. Proper operation and

9

management of a correctional institution, including the duties owed by a reasonable correctional officer, not just a reasonable person, is well beyond the province of a lay jury. When and under what circumstances to provide medical services, appropriate staffing levels, the methods, manner and extent of inmate observation and monitoring—to name just a few considerations—are all elements that must be determined by experts in the field of corrections to operate any correctional institution properly, humanely, securely, and safely. Certainly, depending on many factors, including the type and size of the institution, its location, the degree of security[4] necessary, the resources available, and probably many more, the appropriate operation of a correctional institution may vary from institution to institution, and it requires experts in corrections to understand and apply the standards and guidelines for operating these institutions. *Cf. Rhodes v. Chapman,* 452 U.S. 337, 342 (1981) (recognizing the utility of expert testimony in the field of corrections). To argue that this subject does not require specialized knowledge but rather is common knowledge among lay persons, and that jury would not be helped to understand the evidence or determine a fact in issue by considering such expert testimony, is simply incorrect.

Second, Plaintiff correctly notes that Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." In discerning when such an opinion constitutes a legal conclusion versus when it does not, the Fourth Circuit has explained:

> The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern. *Barile,* 286 F.3d at 760. We identify improper legal conclusions by determining whether 'the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.' *Id.* For example, courts have held inadmissible testimony that a defendant's actions constituted 'extortion,' *DiBella v. Hopkins,* 403 F.3d 102, 121 (2d Cir.2005); that a dog bite constituted 'deadly force,' *Miller v. Clark County,* 340 F.3d 959, 963 n. 7 (9th Cir. 2003); that defendants held a 'fiduciary' relationship to plaintiffs, *Christiansen v. Nat'l Sav. & Trust Co.,* 683 F.2d 520, 529 (D.C. Cir.1982); and that a product was 'unreasonably

---

[4] For instance, minimum security institutions, prison camps, county jails, maximum security penitentiaries, etc. all require different degrees of security.

10

dangerous,' *Strong v. E.I. DuPont de Nemours Co.*, 667 F.2d 682, 685–86 (8th Cir.1981).

*United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). The case *Iko v. Galley* is also illustrative. No. CV 2004-3731, 2007 WL 9758426, at *6 (D. Md. Sept. 17, 2007), *aff'd in part, dismissed in part sub nom. Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008). There, the court found testimony that correctional officers behaved "recklessly or wantonly" offered impermissible conclusions, but testimony regarding breach of the standard of care did not. *Id.* In similar vein, here, Callisto does not offer legal conclusions, such as whether the Correctional Officers were negligent or whether they violated Boley's civil rights. Instead, Callisto simply opines that, given a certain set of facts in the record that he considered, these Defendants breached the standard of care.

An expert's testimony regarding the nature and extent of duties owed by correctional officers to inmates is the proper subject of expert testimony, because *identifying* the standard of care in a field requiring specialized knowledge is the obligation of an expert. *See, e.g. Karn v. PTS of Am., LLC*, No. GJH-16-3261, 2022 WL 743944, at *8 (D. Md. Mar. 11, 2022) ("McAndrew's extensive experience in the field of corrections, including actual experience as a transport officer, is more than sufficient to qualify McAndrew as an expert qualified to opine on the applicable standard of care that applies to detainee and prisoner custody and transportation."); *Iko*, 2007 WL 9758426, at *6 (permitting expert testimony on the subject of, *inter alia*, the standard of care within prisons for providing medical treatment to inmates).

Once the standard of care has been identified, is still the province of the expert to explain whether it has been met or breached. The Fourth Circuit noted that "evidence regarding a departure from a generally recognized standard-of-care is not inherently impermissible." *McIver*, 470 F.3d at 560. Doing so does not usurp the role of the court because, as stated, Callisto's opinions all are

11

directed towards the standard of care and the Correctional Officers' purported breaches thereof. Simply stated, they are permissible opinions that the Correctional Officers did not do what the standard of care required of them, not legal conclusions that they committed certain torts or violated the Constitution. Additionally, explaining whether the standard of care has been met or breached does not usurp the role of the jury. By arriving these opinions, Callisto is merely "appl[ying] the principles and methods [of his specialized knowledge] to the facts of the case." Fed. R. Evid. 702(d). These opinions are not objectionable simply because they "'embrace[] an ultimate issue to be decided by the trier of fact,' Fed. R. Evid. 704(a), though such an opinion may be excluded if it is not helpful to the trier of fact under Rule 702." *Kopf*, 993 F.2d at 377-78. Since Callisto's opinions are helpful to the jury, the fact that they embrace an ultimate issue in the case is no cause for their exclusion.

D. Callisto's Opinions Regarding Duties Not an Issue in Dispute May Still Be Admissible

In his report Callisto discusses certain duties and standards of care that the Correctional Officers claim do not relate to any issues in this case.[5] ECF No. 67 at 11. They seek to have any such testimony excluded on the grounds that such opinions are not relevant and thus unhelpful to the jury under *Daubert*. *Id.* Plaintiff responds that the Correctional Officers are not entitled have Callisto's entire testimony stricken based on three isolated statements about matters which they conclude—without articulating any supporting reason—are irrelevant. ECF No. 76 at 11. Instead, they point out that the three statements to which the Correctional Officers object simply concern the overall duties of correctional officers about which Callisto does not offer specific opinions. *Id.*

---

[5] Those include "watch commanders' duties to the facility administration and their leaders and the standard of care for training correctional officers," the standard for protecting inmates from a variety of harms not at issue in the instant case, and the "officers' duties to 'assess[] the climate and condition of the housing unity.'" ECF No. 67 at 11.

12

In the first instance, it does not appear to the Court that the Correctional Officers are contending that Callisto's entire testimony should be excluded simply and solely because he expresses opinions regarding certain duties and standards that are not at issue in this case. Instead, the Court interprets this part of the Correctional Officers' motion as requesting only the exclusion on relevance grounds of any opinions that are not directly related to the disputed issues. Even so, however, the Court will not in advance attempt to narrowly circumscribe the scope of Callisto's testimony merely because these Defendants claim that Callisto's discussion of the overall duties of correctional officers and the standards of care to which they must adhere are not alleged to have been tortious or violative of Boley's civil rights. The Correctional Officers do not contend that Callisto's opinions regarding other duties and applicable standards of care constitute criticisms of their conduct or are otherwise prejudicial. Certainly, there may be sufficient relevance in describing the overall scope of a correctional officer's duties, and the standard of care applicable to such duties, to provide a jury with an understanding of the context in which the specific duties which are at issue are performed.

Rule 702 is not inapposite. As noted *supra*, specifically allows expert opinion testimony when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Advisory Committee notes to Rule 702 recognize the appropriateness of permitting experts to address general principles to help a jury understand context:

> [I]t might also be important in some cases for an expert to educate the factfinder about general principles without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the

13

principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony into the facts of the case. . . . For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

Fed R. Evid. 702, advisory committee notes to 2000 amendment. Callisto's proposed testimony about the overall duties of correctional officers and the standards applicable to them might very well be relevant to a jury's understanding of their abilities, capabilities, and the expectations Deerfield Correctional Center had of them, by placing their alleged breaches in context. *See, e.g., U.S. v. Tolliver*, 451 F. App'x 97, 104 (3d Cir. 2011) (permitting expert to testify about the features typical of bank fraud, even though not all the features were present in the Defendant's crime). At this juncture the Court cannot say that such testimony would be irrelevant and unhelpful to the jury for all purposes. The Court is better situated at trial to weight the importance and relevance of such matters at the time the testimony is sought to be introduced. This is especially so since the Correctional Officers do not claim that any such testimony would be unfairly prejudicial in any way.

## IV. CONCLUSION

For the foregoing reasons, Defendants Sergeant Bynum and Officer Guy's Motion to Exclude Expert Testimony of Anthony Callisto, ECF No. 66, is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 4, 2022