IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES A. BOLEY, JR., )
ADMINISTRATOR OF THE ESTATE )
OF ROBERT LEE BOLEY )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 2:21CV197 (RCY)
 )
ARMOR CORRECTIONAL HEALTH )
SERVICES, INC., *et al.*, )
 )
    Defendants. )
_____)

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Set Aside, In Part, the Magistrate Judge's Ruling on the Armor Defendants' Motion to Exclude Plaintiff's Expert Witnesses ("Motion to Set Aside") (ECF No. 93). The Motion to Set Aside has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are fully developed, and argument would not aid the Court in its decisional process. E.D. Va. Loc. Civ. R. 7(J). Defendants Armor Correctional Health Services ("Armor"), Dr. Alvin Harris, M.D., and Arleathia Peck, LPN (collectively "Defendants") seek reconsideration of the Magistrate Judge's July 8, 2022, Opinion and Order, denying in part and granting in part Defendants' Motion to Exclude Plaintiff's Expert Witnesses (ECF No. 92). For the reasons stated below, the Court denies Plaintiff's Motion to Set Aside the Magistrate Judge's Ruling.

**I. BACKGROUND**

This suit involves the quality of medical care a prisoner, Robert Boley ("Boley" or "Decedent"), received while experiencing chest pains that ultimately resulted in his death. For

purposes of this opinion, the two major questions are (1) whether Dr. Alvin Harris, M.D. exercised the appropriate standard of medical care after learning that Boley was complaining of chest pain and (2) whether Boley contacted Arleathia Peck, LPN, regarding his chest pains on the night of April 16, 2019. (*See generally* Mem. Supp. Summ. J., ECF No. 58; Mem. Opp. Summ. J., ECF No. 83.) The Defendants sought to exclude the testimony of Dr. William Bethea, M.D. for failing to meet the active clinical practice requirement under Virginia law. (Def.'s Br. Supp. Mot. Exclude Pl.'s Expert Witnesses 2, ECF No. 65.) They also sought to exclude the testimony of Lisa Shawler, RN and Lori Roscoe, RN regarding LPN Peck's purported treatment and care of Boley for being based on speculation and assumptions. (*Id.*)

## II. PROCEDURAL HISTORY

Plaintiff James Boley, brother of the decedent Robert Boley, filed a four-count Complaint on April 14, 2021, alleging negligence, gross negligence, willful and wanton negligence, and federal civil rights violations under 42 U.S.C. § 1983 (ECF No. 1). Defendants Armor Correctional Health Services, Inc., Nurse Arleathia Peck, and Dr. Alvin Harris filed an Answer to the Complaint on July 7, 2021 (ECF No. 10). On April 19, 2022, the Defendants filed a Motion for Summary Judgment and a Memorandum in Support (ECF Nos. 57-58). On April 25, 2022, the Defendants filed a Motion to Exclude Plaintiff's Expert Witnesses Dr. William Bethea, M.D., Lisa Shawler, RN, and Lori Roscoe, RN, as well as a brief in support of that Motion (ECF Nos. 64-65). Plaintiff Boley filed a Motion in Opposition to the Motion to Exclude on May 9, 2022, and the Defendants submitted a rebuttal brief on May 10 (ECF Nos. 77, 79.) On May 11, 2022, Plaintiff Boley filed a Memorandum in Opposition to the Defendants' Motion for Summary Judgment (ECF No. 83), and the Defendants filed their Reply on May 16 (ECF No. 85).

On April 26, 2022, Defendants filed a Motion to Exclude, seeking to exclude three of Plaintiff's expert witnesses (ECF No. 64.)  On July 8, 2022, United States Magistrate Judge Lawrence R. Leonard granted Defendants' Motion to Exclude as to Lisa Shawler, RN's opinions regarding Defendant Armor (Op. and Order 7, ECF No. 92).  Judge Leonard denied Defendants' Motion to Exclude as to William M. Bethea, M.D. and as to Lorie E. Roscoe, RN's and Lisa Shawler, RN's opinions regarding Arleathia Peck, LPN.  (*Id.* 7-9.)  On July 13, 2022, Defendants filed the instant motion, arguing that the Court should set aside the Magistrate Judge's July 8, 2022, Order and exclude the testimonies of Dr. Bethea and RNs Roscoe and Shawler.  (Mot. Set Aside Magistrate Judge's Ruling 1, ECF No. 93; Br. Supp. Mot. 4-9, ECF No. 94.)  Plaintiff filed his Memorandum in Opposition on July 15, 2022 (ECF No. 95), and Defendants filed their Reply on July 18, 2022 (ECF No. 96).

### III. STANDARD OF REVIEW

"The court will not disturb a magistrate judge's ruling on non-dispositive pre-trial matters, unless the ruling is 'clearly erroneous or is contrary to law.'" *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2021 WL 4739314, at *2 (E.D. Va. Oct. 12, 2021) (quoting 28 U.S.C. § 636(b)(1)(A)).  Altering a magistrate judge's non-dispositive order is "extremely difficult to justify." *Carlisle v. Allianz Life Ins. Co. of N. Am.*, No. 2:19cv565, 2021 WL 5104694, at *1 (E.D. Va. Oct 14, 2021) (citing *Bruce v. Hartford*, 21 F. Supp. 3d 590, 593 (E.D. Va. 2014)).  A court's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948).  "The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'" *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 479

(D. Md. 2014) (citing *MMI Prods. v. Long*, 231 F.R.D. 215, 218 (D. Md. 2005)).  When reviewing the magistrate judge's decision under the "clearly erroneous" standard, the Court "is not to ask whether the finding is the best or only conclusion permissible" nor should the Court "substitute its own conclusions for that of the magistrate judge."  *Id.* (internal citation omitted).  Instead, the Court "is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence."  *Id.*

The Federal Rules of Evidence generally control the admissibility of expert testimony.  *In re C.R. Bard, Inc., MDL No. 2187, Pelvis Repair Sys. Prods. Liab. Litig.*, 810 F.3d 913, 919 n.1 (4th Cir. 2016) (explaining that in a diversity case, federal courts apply state substantive law and federal procedural law).  In medical malpractice cases, a federal district court sitting in diversity applies state law to assess the testimony of an expert witness.  *Creekmore v. Maryview Hosp.*, 662 F.3d 686, 690 (4th Cir. 2011) ("[B]ecause the testimony at issue here was required for a medical malpractice claim under Virginia law, the sufficiency of its substance to meet plaintiff's prima facie case is covered by state law."); *see also Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) ("[T]here are circumstances in which a question of admissibility of evidence is so intertwined with a state substantive rule that the state rule . . . will be followed in order to give full effect to the state's substantive policy.") (internal quotations and citations omitted).

## IV. ANALYSIS

### A. Dr. William M. Bethea

With regard to the qualifications of an expert witness in the medical field, the Virginia Code provides that

> [a] witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of

>medicine within one year of the date of the alleged act or omission forming the basis of the action.

Va. Code Ann. § 8.01-581.20(A). The statute presents two methods by which a court may presume that a physician knows the standard of care in his particular specialty or field of medicine: (1) a physician licensed in Virginia is presumed to know the standard of care in the field of medicine or specialty in which the physician is certified and qualified; or (2) a physician who is licensed in a state other than Virginia who meets the educational and examination requirements of the statute is likewise presumed to know the standard of care in the field or medicine or specialty in which the physician is certified and qualified. *Lloyd v. Kime*, 654 S.E.2d 563, 569 (Va. 2008) (citing *Wright v. Kaye*, 593 S.E.2d 307, 311 (Va. 2004)).

The presumption may be rebutted when an expert is shown to fail either of the two requirements: (1) "demonstrat[ing] expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards" (the "knowledge requirement"), and (2) showing that the physician has had an "active clinical practice in either the defendant's specialty or [a] related field of medicine within one year of the date of the alleged act or omission forming the basis of the action" (the "active clinical practice requirement"). *Wright*, 593 S.E.2d at 311 (quoting Va. Code Ann. § 8.01-581.20(A)). To fulfill the "knowledge requirement" an expert witness must have "expert knowledge on the standard of care in the defendant's specialty." *Lloyd*, 654 S.E.2d at 569. A physician satisfies the "active clinical practice requirement" when she has an "active clinical practice in either [the] specialty [of the physician whose actions are in question] or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action." *Jackson v. Qureshi*, 671 S.E.2d 163, 167 (Va. 2009) (internal citations and quotations omitted). Failure to satisfy either the knowledge or

practice requirement disqualifies an expert witness. *Holt ex rel. Holt v. Chalmeta*, 809 S.E.2d 636, 641 (Va. 2018).

Dr. Bethea is an internal medicine specialist who practiced in Virginia for many years before moving to Florida, where he is now licensed and volunteers one day each week at a low-income clinic. (Op. and Order 4.) Thus, he is presumed to know the standard of care for internal medicine. *See Lloyd*, 654 S.E.2d at 569. Defendants do not contend that Dr. Bethea fails to meet the knowledge requirement, so the Court examines whether the Magistrate Judge's holding that Dr. Bethea met the active clinical practice requirement was contrary to law.

In ruling on Defendants' Motion to Exclude (ECF No. 64), the Magistrate Judge found that Plaintiff's expert, Dr. Bethea, "performed the same medical procedure at issue with respect to the Decedent within one year of April 16, 2019," and thus concluded that he met the "active clinical practice requirements" of Virginia Code § 8.01-581.20. (Op. and Order 5-6.)

Defendants argue that the Magistrate Judge erred by denying their motion to exclude the testimony of Dr. Bethea. (Br. Supp. Mot. 4.) They contend that the Magistrate Judge's ruling was contrary to law when he broadly defined the procedure at issue as "the assessment of any complaint of chest pain in any setting," and should have defined the procedure as the "assessment of acute or potentially emergent chest pain" (*id.* 5-6); that his opinion overstates Dr. Bethea's deposition testimony; and that Dr. Bethea had not performed the procedure in question within a year of the date in question. (*Id*. 7-9.) Thus, the Defendants argue that Dr. Bethea fails to meet the active clinical practice requirement because he failed to perform their narrowly defined procedure. (*Id.* 5-6.)

On the other hand, Plaintiff contends that the procedure for evaluating chest pain does not change based on the level of chest pain because the procedure is to "evaluate the person and

determine if their condition is emergent or not." (Mem. Opp'n Mot. 3, ECF No. 95.) Plaintiff argues that allegation at issue is that Defendant Dr. Harris failed to evaluate Boley's chest pain and incorrectly concluded that the condition was not emergent. (*Id.*) Additionally, Plaintiff contends that Defendants' claim that the Magistrate Judge overstated Dr. Bethea's deposition testimony is simply a repackaging of Defendants' first objection to the Magistrate Judge's ruling– if Dr. Bethea has not seen a patient "with chest pain of possible cardiac origin[], necessitating emergency treatment or even further testing," then he has not performed the relevant procedure. (*Id.* 4.)

To meet the active clinical practice requirement, the physician must have "had active clinical practice in *either* the defendant's specialty *or* a related field of medicine within one year of the date of the alleged act or omission forming the basis of that action." *Holt*, 809 S.E.2d at 642 (Va. 2018) (emphasis in original) (internal citations omitted). The provisions of § 8.01-581.20(A) require the expert witness to have had an active clinical practice in a related field within one year of the alleged negligence but require the expert to have performed the actual procedure only "at some point" to prove that the witness's specialty is related to the defendant's specialty. *See id.* at 644. Dr. Bethea has maintained an active clinical presence in defendant Dr. Harris's specialty – internal medicine. (*See* Bethea Dep. 10-11, ECF No. 65-4.) Whether the procedure in question is defined as "assessment of acute or potentially emergent chest pain" or assessing whether chest pain indicates an emergent condition, Dr. Bethea has performed the procedure at some point in his career, meeting the requirements of Va. Code § 8.01-581.20(A). (*See id.* 19-22.) Therefore, Dr. Bethea meets the active clinical practice requirement.

If the physician does not meet the active clinical practice requirement, courts look at whether the expert witness meets the more stringent "actual performance of procedure test" in

which the expert must have performed the procedure at issue within the last year. *Holt*, 809 S.E.2d at 643.[1] The Court finds that it was not clear error for the Magistrate Judge to find that Dr. Bethea performed the same procedure within a year of April 16, 2019, and the Court concludes that the Magistrate Judge's ruling that he satisfied the active clinical practice requirement was not contrary to law.

Courts look to the parties' allegations in defining the medical procedure at issue. *Workman v. Baker*, No. 7:09-CV-415, 2010 WL 4054470, at *6 (W.D. Va. Oct. 13, 2010). Defendants argue that, based on the Complaint, the procedure at issue should be described as "the assessment of acute or potentially emergent chest pain." (Mem. Supp. Mot. 4-6.) This is cherry-picking the Complaint, which does not list the specific procedure at issue. (*See generally* Compl., ECF No. 1.) The procedure that Defendants assert is at issue never appears in the Complaint. After reading the Complaint in its entirety, the Magistrate Judge could have reasonably found that the procedure at issue was the "determin[ation] [of] whether the chest pain indicates an emergent condition . . . or is 'otherwise,'" (Op. and Order 7), which is what the Plaintiff now asserts is the procedure at issue. Medical literature supports the Magistrate Judge's finding. *See* John R. McConaghy, et al., *Acute Chest Pain in Adults: Outpatient Evaluation*, 102 Am. Fam. Physician 721, 721 (2020) (When a patient presents with chest pain, "the first decision point for most physicians is to determine whether the patient needs immediate referral to the emergency department for further testing.")

Additionally, the case law does not support Defendants' contention that the Court should define the procedure in question so narrowly as to preclude Dr. Bethea's clinical experience in

---

[1] The Magistrate Judge found that because Dr. Bethea met the more stringent requirement of having performed the same procedure within a year, that he need not determine whether Dr. Bethea had an active clinical practice in Dr. Harris's specialty or a related field of medicine within one year. (Op. and Order 5-6.)

diagnosing chest pain. *See, e.g.*, *Wright*, 593 S.E.2d at 312 (holding that the procedure in question was laparoscopic surgery in the female pelvic region near the bladder, not the narrower description of the procedure that the defendant performed: urachal cyst excision). In *Jackson v. Qureshi*, the plaintiff claimed that a doctor negligently discharged an infant who presented at the hospital with signs of respiratory distress. 671 S.E.2d at 165. The procedure in question was the "decision not to admit [a child] to inpatient hospital care when the infant presented . . . respiratory distress and/or pertussis." *Id.* at 168. The court did not describe the procedure as the decision to admit the child when the infant presented with *acute* respiratory distress and/or pertussis. *Id.* The Court declines to go beyond the case law to so narrowly define the procedure at issue. Defendants have failed to rebut the presumption that Dr. Bethea is qualified as an expert witness.

Defendants' next two sub-arguments – that the Magistrate Judge's opinion overstates portions of Dr. Bethea's deposition testimony and is based on an overly broad interpretation of the clinical practice requirement – both rely on the Court using Defendants' narrow definition of the procedure in question. As the Court has declined to do so, it will not set aside the Magistrate Judge's decision to deny Defendants' Motion to Exclude Dr. Bethea's testimony.

**B. RNs Lorie E. Roscoe and Lisa Shawler**

The Magistrate Judge further found that the admissibility and foundation of the opinions of two nurses – Lorie E. Roscoe, RN, and Lisa Shawler, RN – as to the actions of Arleathia Peck, LPN, depended on the resolution of LPN Peck's motion for summary judgment. (Op. and Order 8-9.) The Magistrate Judge denied Defendants' objection "at this time," until the resolution of factual disputes. Defendants argue that the Magistrate Judge erred by denying the motion with respect to RNs Shawler and Roscoe. (Mem. Supp. Mot. 9.) Defendants contend that the decision was erroneous because it ignores the possibility that the experts might offer opinions that are based

on "evidence Plaintiff recently submitted," but was not included in the Rule 26 reports. (*Id.*) Further, Defendants argue that "it is not accurate to characterize the admissibility of Shawler's and Roscoe's testimony as a black-or-white issue entirely dependant (sic) on this Court's summary judgment ruling." (*Id.*)[2] Plaintiff argues that this argument is, in part, a veiled attempt to assert that Plaintiff violated discovery rules, and that Defendants should properly assert such claims in an appropriate motion. (Mem. Opp'n Mot. 5)

The Magistrate Judge reasonably concluded that the admissibility of RN Shawler's and RN Roscoe's opinions on whether LPN Peck was involved with the Decedent's care on the day he died was conditioned on whether the Court found that there was a genuine issue of material fact regarding whether LPN Peck actually saw the Decedent on that day. The Magistrate Judge was correct in noting that the resolution of the admissibility question was premature until the Court ruled on the Motion for Summary Judgment, as that would mean either the issue was moot or would require the Defendants to renew the objection in light the Court's opinion on summary judgment. Thus, the Court finds that the Magistrate Judge's ruling was not clearly erroneous or contrary to law.

### IV. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Set Aside. An appropriate Order shall issue.

/s/ 
Roderick C. Young  
United States District Judge

Richmond, Virginia  
Date: <u>November 14, 2022</u>

---

[2] Defendants acknowledged that "ruling on this issue may be premature at this phase," given that the Court has yet to rule on the Motion for Summary Judgment. (Mem. Supp. Mot. 9.)