IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JAMES A. BOLEY, JR., <br>     Plaintiff, <br><br> v. <br><br> ARMOR CORRECTIONAL HEALTH SERVICES, *et al.*, <br>     Defendants. | Civil Action No. 2:21CV197 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Armor Correctional Health Services' ("Armor") and Defendant Arleathia Peck, LPN's ("Nurse Peck") post-appeal Motion for Set-Off Judgment, ECF No. 229. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed his Complaint on April 14, 2021, wherein he advanced wrongful death claims against seven Defendants: Armor, Nurse Peck, Charlotte Hayes, LPN ("Nurse Hayes"), NurseSpring, LLC ("NurseSpring"), Alvin Harris, MD ("Dr. Harris"), Sergeant Emmanuel Bynum ("Sgt. Bynum"), and Officer Joel Guy ("Officer Guy"). *See generally* Compl., ECF No. 1. On May 4, 2022, the Court approved a settlement for $250,000 between Plaintiff, Nurse Hayes, and NurseSpring. Order, ECF No. 74. The matter proceeded to trial as to the remaining Defendants, and on December 9, 2022, a jury found Nurse Peck (and, vicariously, Armor) and Sgt. Bynum liable to Plaintiff. Jury Verdict, ECF No. 158. Nurse Peck and Armor were found liable for simple

1

negligence, and they were additionally found jointly liable, with Sgt. Bynum, for gross negligence. *Id.*

The jury awarded Plaintiff $4 million in compensatory damages against Nurse Peck, Armor, and Sgt. Bynum. *Id.* at 3. After the verdict was read, Armor orally moved for the Court to reduce the damage award to $2.1 million, pursuant to the medical malpractice damages cap imposed by Virginia Code § 8.01-581.15, and to further reduce the award to account for the $250,000 pretrial settlement. *See* Br. Supp. Armor's Oral Mot. Reduce Damages, ECF No. 163.

On January 3, 2023, the Court granted the oral motion after it made several relevant determinations. Mem. Order 3–4 ("January 3, 2023 Order"), ECF No. 171. First, the Court found that Armor and Nurse Peck were healthcare providers and therefore protected by the Virginia medical malpractice cap of $2.35 million. *Id.* at 3–4. Second, the Court determined that Sgt. Bynum was not a healthcare provider, and he was therefore unprotected by the medical malpractice cap. *Id.* Third and finally, the Court agreed that Virginia contribution rules required it to credit each Defendant with the $250,000 pretrial settlement. *Id.* Thus, Plaintiff could recover up to $2.1 million from Armor/Peck, and up to $3.75 million from Sgt. Bynum. *Id.*

On May 4, 2023, Armor, Nurse Peck, and Sgt. Bynum appealed the jury's verdict to the United States Court of Appeals for the Fourth Circuit, asking the Fourth Circuit to set aside the jury's verdict and enter judgment in Defendants' favor, or, in the alternative, vacate the jury's verdict and remand for a new trial. Bynum Not. Appeal, ECF No. 210; Armor/Peck Not. Appeal, ECF No. 211; *see generally* Opening Br., *Boley v. Armor Corr. Health Servs.*, 2024 WL 5244555 (4th Cir. Dec. 30, 2024). While the appeal was pending, however, Sgt. Bynum settled with Plaintiff for $1,875,000, and this Court approved the settlement on July 11, 2023. Order, ECF No. 222. More than one year later, on December 30, 2024, the Fourth Circuit affirmed the jury's

verdict in its entirety. *Boley*, 2024 WL 5244555, at *13. Armor and Nurse Peck ("Movants") filed the instant Motion one month later, on January 24, 2025. Mot. Set-off J., ECF No. 229. On February 7, 2025, Plaintiff filed his Memorandum in Opposition to Defendants Armor and Peck's Motion to Set-off the Judgment ("Memorandum in Opposition"), ECF No. 231. On February 13, 2025, Movants filed their Reply Memorandum in Support of Motion for Set-off of Judgment ("Reply"), ECF No. 232.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b),[1] the Court "may relieve a party or its legal representative from a final judgment, order, or proceeding" upon a showing of one of six enumerated grounds:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

---

[1] The parties dispute whether this Motion is controlled by Rule 59(e) or Rule 60(b). Mem. Supp. 5; Mem. Opp'n 3–4. Movants initially contended that the relevant rule is Rule 59(e), asserting that "[t]he request for set-off from a jury verdict is generally styled as a Rule 59(e) motion to alter or amend the judgment." Mem. Supp. 5 (collecting cases). In response, Plaintiff argues that the Motion is controlled by Rule 60(b), since it was filed well after the time for an appeal lapsed. Mem. Opp'n 3–4. In their Reply, Movants argue that, even if Rule 60(b) controls, their arguments are meritorious. *See generally* Reply.

The principal difference between Rule 59(e) and Rule 60(b) is the time in which relief must be requested. Both Rules provide a district court authority to alter a final judgment. *Compare* Fed. R. Civ. P. 59(e) *with* Fed. R. Civ. P. 60(b). As noted by Plaintiff, Rule 59(e) motions must be filed within twenty-eight days of a final judgment; that Rule authorizes the Court to "rectify its own mistakes in the period immediately following the entry of judgment." Mem. Opp'n 3 (quoting *Daulatzai v. Maryland*, 97 F.4th 166, 177 (4th Cir. 2024)). This twenty-eight-day deadline is rigid; in fact, it is one of the few that the Court is powerless to enhance. Fed. R. Civ. P. 6(b)(2). Moreover, Rule 59(e) relief, if appropriate, must predate an appeal, since such relief merges with the Court's underlying decisions for purposes of appellate review. *Banister v. Davis*, 590 U.S. 504, 508 (2020) ("[I]f [a litigant] timely submits a Rule 59(e), there is no longer a final judgment to appeal from. Only the disposition of that motion restores the finality of the original judgment"). Conversely, "Rule 60(b) authorizes a court to relieve a party from a final judgment long after the judgment is final." *Daulatzai*, 97 F.4th at 177.

Since the instant Motion comes almost two years following this Court's final judgment, Second Am. Clerk's J., ECF No. 209, and after an appeal of the Court's underlying decisions, it is plain to the Court that this Motion is controlled by Rule 60(b). *Pauley v. Noran*, 2022 WL 17663503, at *1 (4th Cir. Dec. 14, 2022) (holding that a Rule 59(e) motion "filed more than 28 days after the underlying judgment should be treated as a [Rule] 60(b) motion, even if it is labeled by the litigant as a Rule 59(e) motion"). As such, the Court analyzes the instant Motion under Rule 60(b).

3

(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In order to warrant the district court's full consideration, the moving party must show "that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment [altered]." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir. 1993) (quoting *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987)). Following such a preliminary showing, the movant must then "proceed to satisfy one or more of [Rule 60(b)]'s six grounds for relief from judgment." *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984).

### III. ANALYSIS

**A. Movants Satisfy the Preliminary Rule 60(b) Requirements**

At the outset, the Court finds that the instant Motion satisfies the three preliminary Rule 60(b) requirements: (1) timeliness, (2) a facially meritorious defense, and (3) lack of unfair prejudice. *Nat'l Credit Union*, 1 F.3d at 264.

First, the Court finds that the Motion is timely. As described *infra*, this Motion is governed by Federal Rule of Civil Procedure 60(b)(5). Such a motion must be filed "within a reasonable time." Fed. R. Civ. P. 60(c). What constitutes a "reasonable time" is a "fact intensive inquiry within the broad equitable powers of a district court." Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2866 (4th ed. 2024) (citing *Brown v. Tenn. Dep't Fin. & Admin.*, 561 F.3d 542, 545 (6th Cir. 2009)). Relevantly, a reviewing court may consider the fact of a pending appeal when determining whether a Rule 60(b)(5) motion was timely filed. Wright &

4

Miller § 2866 ("[T]he fact that an appeal had been pending may be considered in determining whether a motion was made in a reasonable time."); *Pierce Oil Corp. v. United States*, 9 F.R.D. 619, 621 (E.D. Va. 1949) (holding that a motion to alter judgment was filed within a "reasonable time" when it was filed two months after the Supreme Court denied certiorari, despite the fact that the district court's judgment had been filed two years prior).

      Here, Movants argue that their Motion is timely because, though it is filed more than two years after the jury rendered a verdict and approximately eighteen months after the Court approved Sgt. Bynum's settlement with Plaintiff, it was filed less than one month after the Fourth Circuit approved the jury's verdict. *See* Mem. Supp. 3–4, ECF No. 230; Reply 4–7, ECF No. 232. Plaintiff disagrees, asserting that Movants could have—and should have—brought this Motion during the pendency of the Fourth Circuit appeal. Mem. Opp'n 5–8, ECF No. 231.

      While Plaintiff is correct that Movants could have filed the instant Motion while this matter was considered on appeal, *see* Wright & Miller § 2866, the Court nevertheless finds that the Motion was filed in a "reasonable time." As noted *supra*, this Motion was filed less than one month after the Fourth Circuit affirmed the jury's verdict against Movants. Mot. Set-off J., ECF No. 229. While that appeal lay pending, the parties faced the possibility that the Fourth Circuit would set aside or vacate the jury's verdict entirely. *See* Opening Br., *Boley*, 2024 WL 5244555. Either relief by the Fourth Circuit would, of course, render the instant Motion moot. Thus, it was entirely reasonable for Movants to wait for the resolution of the appeal to file the instant Motion. As such, the Court finds that the Motion is timely.

      Second, the Court finds that the Motion articulates a facially meritorious claim for relief under Rule 60(b). Specifically, the Court finds that Movants' request is properly brought within the fifth ground for relief enumerated by Rule 60(b), which permits a court to "relieve a party . . .

from a final judgment [when] . . . the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). This ground for relief provides "the appropriate vehicle through which to seek credit against all or part of a judgment for the amount paid by a settling co-defendant." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1274–1275 (11th Cir. 2008) (adopting *Torres-Troche v. Mun. of Yauco*, 873 F.2d 499, 501 n.7 (1st Cir. 1989); *Kassman v. Am. Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1976); *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090–91 (3d Cir. 1978)). Since Movants seek credit for a co-defendant's settlement, Rule 60(b)(5) squarely applies to their request. And, as analyzed *infra*, Movants have articulated a meritorious claim of relief under Rule 60(b)(5). *See Cavalieri v. Virginia*, 2022 WL 1153247, at *2 (4th Cir. Apr. 19, 2022) (incorporating substantive analysis in determining that movant had brought a facially meritorious claim). Thus, the instant Motion properly identifies a ground for relief under Rule 60(b)(5) and otherwise articulates a facially meritorious defense. As such, the second preliminary requirement of Rule 60(b) is satisfied.

Third and finally, neither party has identified any unfair prejudice that would result from Movants' requested relief. *See generally* Mem. Supp; Mem. Opp'n; Reply. The only loss Plaintiff stands to suffer is lessened damages—damages to which, if Movants are correct, Plaintiff is not entitled. Because "[o]ne cannot be prejudiced by the loss of that to which he was not entitled," the instant Motion does not present a risk of unfair prejudice. *Compton v. Alton S.S. Co.*, 608 F.2d 96, 103 (4th Cir. 1979). Thus, Movants have satisfied each of the preliminary requirements of a Rule 60(b) Motion. Accordingly, the Court proceeds to the merits of the Motion.

**B. Set-off is Warranted Based on Sgt. Bynum's Settlement**

The instant Motion asks the Court to reduce the already-capped jury verdict against Movants based on Sgt. Bynum's $1.875 million settlement with Plaintiff. Movants argue that such

a reduction (or "set-off") is appropriate under Virginia contribution law. Mem. Supp. 6 (citing Va. Code Ann. § 8.01-35.1(A)). In response, Plaintiff contends that a reduction is inappropriate because Sgt. Bynum is not a healthcare provider, and, therefore, his settlement cannot be counted against the medical malpractice cap previously imposed upon Movants. Mem. Opp'n 12–17. The Court ultimately agrees with Movants and will grant the Motion.

As this Court previously observed, the Virginia medical malpractice cap "applies to limit recovery against healthcare provider defendants for a single injury to a patient." Jan. 3, 2023 Order at 3 (citing Va. Code Ann. § 8.01-581.15), ECF No. 171. As applied to this case, the Virginia medical malpractice cap prohibits Plaintiff from recovering more than $2.35 million from any healthcare-provider defendant, including Movants. *Id.*

The parties engage in substantial debate regarding the applicability of the Virginia medical malpractice cap to Sgt. Bynum's settlement with Plaintiff. *See* Mem. Opp'n 12–17. Notwithstanding this disagreement, the dispositive question here is not whether Sgt. Bynum falls within the Virginia medical malpractice cap such that he is (or is not) protected by its limitations. Rather, this Motion presents a simple question regarding the function of Virginia contribution rules when the non-settling party's liability is capped by statute—a question this Court has already answered.

The controlling Virginia statute regarding joint tortfeasor contributions provides that, when one joint tortfeasor settles with a plaintiff, "[the settlement] shall not discharge any other person from liability . . . but any amount recovered against the other person or any one of them shall be reduced by . . . [the] amount stipulated." Va. Code Ann. § 8.01-35.1. Thus, "[i]f one tortfeasor settles and recovery is later obtained against the other tortfeasors, the amount of such recovery is reduced by the amount of the settlement." Robert E. Draim & David D. Hudgins, *Virginia Practice*

*Tort & Personal Injury Law* § 16:5 (July 2024); *accord Fairfax Hosp. Sys., Inc. v. Nevitt*, 457 S.E.2d 10, 14 (Va. 1995).

As this Court has already clarified, any joint tortfeasor settlement credits are counted against the Virginia medical malpractice cap. Jan. 3, 2023 Order at 3; *accord Fairfax Hosp. Sys.*, 457 S.E.2d at 14–15. This precise issue was before the Court following Movants' oral motion to reduce the damages against them. *See* Jan. 3, 2023 Order. There, the parties' arguments required the Court to determine the calculation of available damages against Movants given the $250,000 pretrial settlement between Plaintiff, Nurse Hayes, and NurseSpring. Applying Virginia contribution law, the Court determined that Movants' liability would first be capped at $2.35 million pursuant to the Virginia medical malpractice cap, and then reduced by the $250,000 pretrial settlement, resulting in a maximum outstanding liability of $2.1 million. *See generally id.* Given Sgt. Bynum's subsequent $1.875 million settlement with Plaintiff, the Court's existing logic further reduces Movants' liability to $225,000.

This calculation squares with controlling Virginia law. In *Fairfax Hospital System, Inc. v. Nevitt*, 457 S.E.2d 10, 14 (Va. 1995), the Virginia Supreme Court considered the combined effect of the Virginia medical malpractice cap and Virginia contribution rules. The court held that, where a joint tortfeasor settles and a healthcare provider defendant does not, the healthcare provider defendant receives the benefit of *both* the medical malpractice cap and the settlement credit. *Id.* at 14–15. Thus, a court should first affix the statutorily capped damages and then reduce that amount by any settlements. Notably, as is the case here, this calculation stands regardless of whether the joint tortfeasor is a healthcare practitioner themselves. *Id.* at 14 ("The settlement credit mandate of Code § 8.01-35.1 does not require that a person who has been released be a

8

health care provider. It requires only that such a person and the defendant health care provider at trial be joint tortfeasors mutually liable for the same injury.").[2,3]

Thus, Virginia law supports a reduction of Movants' liability in the amount of Plaintiff's settlement with Sgt. Bynum, resulting in liability totaling $225,000.

## IV. CONCLUSION

Because Virginia law requires that joint tortfeasors receive credit for their co-defendant's settlements and that such credit be calculated after identifying any applicable damages cap, the Court will grant the Motion.

An appropriate Order will issue.

/s/ *RCY*
Roderick C. Young
United States District Judge

Date: July 8, 2025
Richmond, Virginia

---

[2] Plaintiff argues that *Fairfax Hospital System, Inc.* does not control the instant analysis. Mem. Opp'n 14–17. In support, Plaintiff asserts that the *Fairfax Hospital* rule has since been limited by Virginia Supreme Court and Fourth Circuit precedent clarifying that the Virginia medical malpractice cap "does not protect any individual or entity that is not a health care provider." Mem. Opp'n 12 (citing *Lab'y Corp. of Am. Holdings v. Clinical Lab'y Consultants*, 121 F.3d 699, 1997 U.S. App. LEXIS 23549 (4th Cir. Sept. 5, 1997) (unpublished table decision); *Schwartz v. Brownlee*, 482 S.E.2d 827, 831 (Va. 1997). Not so. The precedent cited by Plaintiff does not limit *Fairfax Hospital* but instead clarifies that joint tortfeasors who are not health care providers are not protected by the Virginia medical malpractice cap. *Lab'y Corp.*, 1997 U.S. App. LEXIS 23549, at *6 n.1; *Schwartz*, 482 S.E.2d at 831. Thus, the import of these cases is rather that—as the Court has already determined—Sgt. Bynum is not protected by the Virginia medical malpractice cap, and Plaintiff could have sought to recover the full, uncapped jury award from him. Jan. 3, 2023 Order at 4. That Plaintiff opted not to do so is not part of the Court's present calculus; the only question before the Court is to what extent Sgt. Bynum's settlement serves to reduce Movants' liability beyond the reduction this Court previously calculated based on the medical malpractice cap and the pre-verdict NurseSpring/Nurse Peck settlement. Because the cases Plaintiff cites do not address this question, the Court rejects Plaintiff's argument that they render *Fairfax Hospital* nondispositive.

[3] Plaintiff alternatively requests that the Court certify this question presented in the parties' papers to the Virginia Supreme Court. Mem. Opp'n 17. Because this matter turns on settled Virginia law, the Court declines Plaintiff's request.